OPINION
{¶ 1} Defendants, Paul and Dorothy Good, appeal from a judgment awarding Plaintiffs, Terry and Lynn McCoy, $36,000.00 as and for compensatory damages and $15,000.00 as and for punitive damages, for a total award of $51,000.00 against the Goods. The judgment was awarded on verdicts returned by a jury following a trial on the McCoys' claims for relief alleging fraud and misrepresentation arising from a transaction in which the McCoys purchased a residential real property from the Goods.
 {¶ 2} The Goods put their property on the market for sale in 1999. Pursuant to R.C. 5302.30, the Goods executed a Residential Property Disclosure Form that they provided the McCoys. With respect to item G), pertaining to "Wood Boring Insects/Termites," the form asked: "Do you know of the presence of any wood boring insects/termites in or on the property or any existing damage to the property caused by wood boring insects/termites?" The Goods checked the box indicating "yes," and further described the condition, stating: "Termites present in lower bath/shower with previous owner. House treated for termites."
 {¶ 3} Under the same item G), the form posed the following further question: "If owner knows of any inspection or treatment for wood boring insects/termites since owning the property (but not longer than the past 5 years), please describe:" The Goods responded: "Termite treatment completed in house in 1993 and updated annually."
 {¶ 4} The McCoys offered to purchase the property for $248,000 and the Goods accepted the offer. Their contract conditioned the sale on a termite inspection, and it gave the McCoys sixty days in which to have an inspection performed. The McCoys did not obtain a termite inspection, though they did have a "whole house" inspection performed. They made no inquiries of the Goods concerning termite infestation or damage related to the Goods' responses to the questions posed on the Residential Property Disclosure Form. The sale was closed in early 2 000, and the McCoys moved in.
 {¶ 5} In the next year, 2001, the McCoys discovered damage to the house resulting from termite infestation. They undertook an inspection that revealed extensive damage in the interior of the walls of several rooms. They paid $35,000 to repair the damage. The McCoys subsequently commenced the underlying action against the Goods on claims for relief for fraud and misrepresentation, seeking compensatory and punitive damages.
 {¶ 6} In their complaint, the McCoys alleged that the Goods' responses to item G) of the Residential Property Disclosure Form were false and misleading because the responses omitted material facts of which the Goods were aware: that in addition the house was treated for termites in 1995 and 1997, and that termite damage existed behind a panel in the stairwell wall and around the wet bar in the basement. (Complaint, paragraphs 8 and 9.)
 {¶ 7} The Goods moved for summary judgment on the McCoys' claims for relief. The trial court granted the motion (Dkt. 27), reasoning that, their omissions notwithstanding, the disclosures the Goods made were sufficient to put the McCoys on notice of the possible existence of termite damage, and that absent further inquiry or inspection the McCoys could not prove that they had reasonably relied on the Goods' alleged misrepresentations to their detriment. The court relied on the rule ofTipton v. Nuzum (1992), 84 Ohio App.3d 33, which held: "Once alerted to a possible defect, a purchaser may not simply sit back and then raise his lack of expertise when a problem arises." Id., at 38.
 {¶ 8} On appeal, we reversed the summary judgment, stating:
 {¶ 9} "The McCoys contend that the trial court erred in rendering summary judgment in favor of the Goods, because the Goods failed to disclose both the full extent of the termite infestation and the fact that the infestation was ongoing. In response, the Goods insist that their disclosure was enough to place a burden on the McCoys to secure their own inspection. While we agree that the wiser course would have been for the McCoys to have had the house inspected, we reject the idea that an incomplete disclosure of problems shifts all of the responsibility onto a buyer. The fact remains that the Goods chose not to reveal either the full extent of the termite infestation or the fact that the problems were ongoing. Had they done so, the McCoys would have been fully aware of the need for their own inspection." McCoy v.Good, 160 Ohio App.3d 55, 2005-Ohio-1370, ¶ 11.
 {¶ 10} On remand, the case was tried to a jury. The evidence showed that Dorothy Good, while she also had signed the Residential Property Disclosure Form, wholly relied on the knowledge and representations of her husband, Paul Good.
 {¶ 11} Paul Good testified that he and his wife signed the Residential Property Disclosure Form on September 7, 1999. (T. 92). Although the disclosure form asked only about the previous five years, Paul referenced the termite treatment in 1993 to establish a baseline. (T. 94-95).
 {¶ 12} Paul Good testified that the Goods obtained a termite warranty on the house through an exterminating company. (T. 104) . Following the first inspection, the contract was renewed each year, at which time the termite company came out and inspected the house again. (T. 104-105). Paul could recall only one time when the termite company found active termites. (T. 227). After that occasion, the termite company did not find any active termites in their annual inspections. (T. 228).
 {¶ 13} On February 6, 1995, Paul wrote a letter (Plaintiff's Exhibit 6) to the termite company to put the company on notice that the Goods had discovered some type of termite activity in the area of the basement steps. (T. 95-97). The letter stated: "This letter is to serve notice that I believe that I have discovered evidence of termite activity under the steps to my basement. Under the terms of your treatment warranty I request that an inspection be conducted around the suspected area to determine if additional treatment is necessary." After an inspection, the termite company informed the Goods that there were swarmers in the basement steps. (T. 98). The termite company performed a termite treatment around the basement steps and the water heater, which was the area that had originally been treated in 1993. (T. 98-99).
 {¶ 14} Paul Good also testified, on cross-examination, that he had discovered termite damage to the basement steps or staircase and that he cut away the damaged portion and covered it with a plywood panel that he painted. (T. 100-103) .
 {¶ 15} Paul wrote another letter to the termite company on March 12, 1997. (Plaintiff's Exhibit 7). This letter was a follow-up to the annual termite inspection that took place on March 10, 1997. The letter states, in relevant part, "On March 10, 1997, termites were observed in the west wall of the basement and around the bar area in the family room on the lower living level. The basement area had been previously treated in 1996. Other areas in the house were treated in 1995 on two occasions. I am concerned that the previous methods of treatment do not appear to be effective in removing the termites . . ."
 {¶ 16} In March 1999, the termite company twice came to treat for termites because the company had found swarmers during the annual inspection. (T. 118-119). In January 2000, immediately before the Goods sold the house to the McCoys, Paul had the termite company inspect the house. The termite company found no active termites. (T. 225-226).
 {¶ 17} Paul Good testified that he did not specifically mention the additional treatments and inspections that occurred from 1995 to 1999 in his responses on the Real Property Disclosure Form because he believed they were encompassed in his "updated annually" remark or description. He also said that he considered the termite damage in the basement steps to be part of the damage to the lower bath shower area that he mentioned on the disclosure form. (T. Ill) . Paul did not have records in front of him when he completed the disclosure form, and he said that he had tried in good faith to approximate and summarize the treatments by using the phrase "updated annually." (T. 119, 231).
 {¶ 18} The jury returned verdicts for the McCoys in the amount of $36,000.00 for compensatory damages and $15,000.00 for punitive damages. The Goods filed a timely notice of appeal.
FIRST ASSIGNMENT OF ERROR
 {¶ 19} "THE TRIAL COURT ERRED IN ENTERING JUDGMENT IN FAVOR OF APPELLEES ON THEIR CLAIM FOR FRAUD BECAUSE APPELLEES FAILED TO PROVE THE AMOUNTS OF ANY DAMAGES THEY SUSTAINED BECAUSE OF APPELLANTS' ALLEGED FRAUD."
 {¶ 20} The McCoys offered evidence concerning the nature and extent of the damage to the house, which they contended was a result of termite infestation. They also testified that they spent $36,000.00 to repair the damage. The Goods argue on appeal that the evidence was insufficient to support the judgments against them because expert testimony was required to prove the necessity and reasonableness of the cost of the repairs the McCoys performed. We do not agree.
 {¶ 21} "Where there is fraud inducing the purchase or exchange of real estate, Ohio courts have held that the proper measure of damages is the difference between the value of the property as it was represented to be and its actual value at the time of purchase or exchange. This is known as the `benefit of the bargain' rule. . . . Courts have also held that the cost of repair or replacement is a fair representation of damages under the benefit of the bargain rule and is a proper method for measuring damages." Brewer v. Brothers (1992), 82 Ohio App.3d 148, 154
(citations omitted). Expert testimony is not always required to establish the necessity of repairs or the reasonableness of the costs incurred to repair a damaged home. Reynolds v. Bauer, Montgomery App. No. 21179, 2006-Ohio-2912, ___23.
 {¶ 22} The McCoys testified regarding the termite damage to their house and introduced a videotape and photographs of the termite damage. Paul Good conceded that the damage in Plaintiff's Exhibit 2 was termite damage. (T. 102-103). The realtor for the Goods testified that the termite damage was severe. (T. 179-180). Lynn McCoy testified that approximately $35,000 was spent over five years to repair the termite damage. (T. 59-60). Terry McCoy testified that $36,000 was spent to repair the termite damage. (T. 140).
 {¶ 23} The foregoing evidence supports a reasonable inference that the repairs the McCoys performed were necessary and that the cost of those repairs was reasonable. The Goods did not object at trial that the evidence was inadmissible for that purpose because the witnesses were incompetent to offer it and that expert testimony was instead required.[1] They therefore waived any error in the admission of the evidence that the Goods offered to prove damages. State v.Wilson (1982), 8 Ohio App.3d 216. The trier of fact was then free to consider the evidence for that purpose in reaching its verdict.
 {¶ 24} Plain error is not waived, but plain error is not demonstrated. When a claim involves "a residential real property and damages to it [,] [j]urors may be presumed to understand what defects make a property unhabitable or otherwise diminish the owner's enjoyment and use of it. Further, though the particular repairs undertaken to do that may not be ones with which jurors are specifically familiar, jurors are not so unable to draw proper inferences from the facts they hear that expert opinion testimony is needed in order for the jury to find that the costs incurred were reasonable and the repairs necessary." Reynolds v.Bauer, at ¶ 22. And, as we also pointed out in that case, failure to object to the competence of a non-expert whose testimony is offered for the purpose of proving damages waives the right to argue on appeal that expert testimony was required. Id., at ¶ 19.
 {¶ 25} The first assignment of error is overruled.
SECOND ASSIGNMENT OF ERROR
 {¶ 26} "THE TRIAL COURT ERRED IN ENTERING JUDGMENT AGAINST APPELLANTS FOR PUNITIVE DAMAGES."
THIRD ASSIGNMENT OF ERROR
 {¶ 27} "THE TRIAL COURT COMMITTED PLAIN ERROR IN FAILING TO PROPERLY INSTRUCT THE JURY ON THE ISSUE OF PUNITIVE DAMAGES AND IN FAILING TO GIVE COUNSEL AN OPPORTUNITY TO OBJECT TO THE JURY INSTRUCTIONS PRIOR TO THE JURY RETIRING."
 {¶ 28} Punitive damages are not recoverable against a defendant in a tort action unless "[t]he actions or omissions of that defendant demonstrate malice or aggravated or egregious fraud." R.C.2315.21(C)(1). A plaintiff must establish entitlement to punitive damages by clear and convincing evidence. R.C. 2315.21(D)4).
 {¶ 29} The trial court gave the following instruction to the jury regarding punitive damages: "You may also consider whether you will separately award punitive damages. If you do not find actual damage, you cannot consider punitive damages. If you award punitive damages, the amount should be fair and reasonable under all the facts and circumstances. It should not be excessive nor influenced by passion, sympathy, or prejudice." Interrogatory Number 3 submitted by the trial court to the jury asked: "What amount of punitive damages, if any, have you determined by a preponderance of the evidence are due and owing to the plaintiffs."
 {¶ 30} Unlike the McCoys' proposed jury instruction (Dkt. 37), which was correct, the trial court's instruction regarding punitive damages made no mention of the elements of malice or egregious or aggravated fraud. Interrogatory Number 3 set forth the incorrect standard of proof, a preponderance of the evidence instead of clear and convincing evidence. The trial court erred when it gave the instruction and submitted the interrogatory.
 {¶ 31} The Goods failed to object to the jury instruction until after the jury had returned its verdict in favor of the McCoys. There was no objection to the interrogatory. Civ. R. 51(A) states: "A party may not assign as error [on appeal] the giving or the failure to give any instruction unless the party objects before the jury retires to consider the verdict, stating specifically the matter objected to and the grounds of the objection. Opportunity shall be given to make the objection out of the hearing of the jury."
 {¶ 32} Even where error is waived, reversal on appeal may be predicated on plain error. However, "[i]n appeals of civil cases, the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." (Internal citations omitted). Goldfuss v. Davidson (1997),79 Ohio St.3d 116, Syllabus by the Court.
 {¶ 33} We believe that this is one of those rare and exceptional cases in which the civil plain error standard applies. The record is devoid of any evidence, much less clear and convincing evidence, R.C.2315.21(D)(4), from which reasonable minds could find that the Goods' acts or omissions in failing to reveal any termite infestations and damage known to them "demonstrate malice or aggravated or egregious fraud." R.C. 2315.21(C) (1). Therefore, giving an instruction on punitive damages was civil plain error, for which the award of punitive damages must be reversed.
 {¶ 34} The second and third assignments of error are sustained.
FOURTH ASSIGNMENT OF ERROR
 {¶ 35} "BECAUSE APPELLEES WERE NOT JUSTIFIED IN RELYING ON THE RESIDENTIAL DISCLOSURE FORM IN CONCLUDING THAT THE HOUSE WAS FREE FROM TERMITE DAMAGE, THE RECORD DOES NOT SUPPORT THE JURY'S VERDICT OF FRAUD."
 {¶ 36} We construe the error assigned to be that the jury's verdict is against the manifest weight of the evidence. It is well-settled that judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence. C.E. MorrisCo. v. Foley Construction Co. (1978), 54 Ohio St.2d 279.
 {¶ 37} Resolution of the issue the assignment of error presents requires consideration of the interplay between the common law doctrines pertaining to fraud, the duty of the seller of real property to disclose the existence of hidden or latent defects, and the requirements of R.C.5302.30.
 {¶ 38} At common law, the doctrine of caveat emptor governed sales of real property. It "relieves a vendor of the obligation of revealing every imperfection that may exist in a residential property," Garvey v.Clevidence, Summit App. No. 22143, 2004-Ohio-6536, at ¶ 20, by precluding recovery for damage arising from structural defects when the defect was discoverable upon a reasonable inspection, the purchaser had an unimpeded opportunity to examine the premises, and there was no fraud on behalf of the seller. Layman v. Binns (1988), 35 Ohio St.3d 176.
 {¶ 39} Where a hidden or latent defect of a material nature exists and is known to the seller, an action for fraud may be brought if the seller misrepresents or fails to reveal the defect. Id. The elements of a fraudulent misrepresentation claim are:
 {¶ 40} "(1) a representation, or where there is a duty to disclose, or concealment of a fact, (2) which is material to the transaction at hand, (3) made falsely, with knowledge of its falsity, or with such other disregard and recklessness as to whether it is true or false that knowledge may be inferred, (4) with the intent of misleading another into relying on it, (5) justifiable reliance upon the representation or concealment, and (6) a resulting injury proximately caused by the reliance." Cardi v. Gump (1997), 121 Ohio App.3d 16, 22,698 N.E.2d 1018. "[0]ne who fails to disclose material information prior to the consummation of a transaction commits fraud only when he is under a duty to do so. And the duty to disclose arises when one party has information "that the other [party] is entitled to know because of a fiduciary or other similar relation of trust and confidence between them."'" Statev. Warner (1990), 55 Ohio St.3d 31, 54, 564 N.E.2d 18, quotingChiarella v. United States (1980), 445 U.S. 222, 100 S.Ct. 1108, 63 L.Ed.2d 348, quoting Restatement of the Law 2d, Torts (1976), Section 551(2)(a). Fifth Third Bank v. Cope, 162 Ohio App.3d 838,2005-Ohio-4626, at ¶ 25.
 {¶ 41} Pursuant to R.C. 53 02.3 0(D), the director of commerce has prescribed a form to be completed by sellers of real property, identifying certain matters as well as "any material defects in the property that are within the actual knowledge of the transferor." The form, captioned "Residential Property Disclosure Form," must be provided to prospective purchasers. R.C. 5302.30(C). The seller must act in good faith in making the disclosures concerned. R.C. 5302.30(E)(1). "`Good faith' means "honesty in fact in a transaction involving the transfer of residential real property." R.C. 5302.30(A)(1). The requirements of the section do "not limit or abridge" a common law claim for fraud. R.C.5302.30(J). Nevertheless, a seller is not liable in damages for losses arising from any error, inaccuracy, or omission that "was not within the transferor's actual knowledge." R.C. 5302.30(F)(1).
 {¶ 42} The duty of good faith that R.C. 5302.30(E)(1) imposes comports with the requirement for a claim for relief in fraud that the defendant must have had a duty of disclosure. Fifth Third Bank v. Cope. That requirement entitles prospective purchasers to believe that the seller's particular responses are the product of "honesty in fact." R.C.5302.30(A)(1). Nevertheless, that belief does not relieve the purchaser of his obligation to conduct his or her dealings with proper vigilance to his interest. Foust v. Valleybrook Realty Co. (1981),4 Ohio App.3d 164. "Such vigilance imputes a duty upon one to reasonably investigate the truth of representations made prior to reliance thereon." Dito v.Wozniak, Lorain App. No. 04CA008499, 2005-Ohio-7, at ¶ 18. Cases have held that "once aware of a possible problem, the buyer has a duty either to (1) make further inquiry of the owner, or (2) seek the advice of someone with sufficient knowledge to appraise the defect." Id., at ¶ 19, quoting Pickard v. Provens (July 12, 2000), Summit App. No. 19408.
 {¶ 43} Like the common law rule on latent defects, R.C. 5302.30
imposes no duty on a seller to disclose the existence of defects of which he lacks actual knowledge. In that respect, neither the common law rule nor the statute makes the seller a guarantor of the condition of his property. Indeed, the Residential Property Disclosure Form carries the following disclaimer: "THIS STATEMENT IS NOT A WARRANTY OF ANY KIND BY THE OWNER OR ANY AGENT OR SUBAGENT REPRESENTING THE OWNER OF THE PROPERTY. THIS STATEMENT IS NOT A SUBSTITUTE FOR ANY INSPECTIONS. POTENTIAL PURCHASERS ARE ENCOURAGED TO OBTAIN THEIR OWN PROFESSIONAL INSPECTION." The Residential Property Disclosure Form nevertheless requires the seller to disclose the existence of particular circumstances or conditions that the director of commerce has found are associated with certain defects of a latent nature, and to act in good faith in describing those conditions or circumstances when the seller has actual knowledge of them.
 {¶ 44} The rationale of R.C. 53 02.3 0 and the requirements it imposes is that prospective purchasers, being put on notice of particular circumstances or conditions associated with a latent defect, will either decline to make an offer to purchase the property or, before doing so, will make further inquiries or inspections to determine the existence and extent of the defect. Prospective purchasers are thus expected to remain vigilant to their interests. Further, having been put on notice as R.C. 53 02.3 0 requires, a prospective purchaser may not do nothing, and then seek to recoup the cost of repairing the defect from a seller who acted in good faith in making the required disclosures.
 {¶ 45} On appeal, the Goods argue that the evidence was insufficient to support the McCoys' claim for relief for fraud because it does not support a finding that the McCoys justifiably relied on the disclosures the Goods made. The Goods rely on the decision of the Tenth District Court of Appeals in Wiermeyer v. Cook's Termite Pest Control,Inc., Franklin App. No. 05AP-21, 2006-Ohio-640. In that case, the appellate court affirmed a summary judgment for the sellers because the purchasers had acquired actual knowledge of termite infestation from inspections and reports before they purchased the house. That is not the case here, and so we do not find Niermeyer dispositive of the issue before us.
 {¶ 46} This case is similar to Niermeyer in that in both instances the seller checked the box marked "yes" in response to the question in the Residential Property Disclosure Form asking whether the owner knows of "the presence of any wood boring insects/termites in or on the property or any existing damage to the property caused by wood boring insects/termites?" In Niermeyer, the seller's description of the condition was: "As in house inspection report (4-26-2000) and bug inspector report (also 4-26-2000) to Niermeyers." The description thus confirmed the existence of the condition and the seller's actual knowledge concerning it.
 {¶ 47} In contrast, the description that the Goods provided implies that the reported termite problem no longer exists. It states: "Termites present in lower bath/shower with previous owner. House treated for termites." Regarding any termite inspection or treatment within the past five years, the Goods stated: "Termite treatment completed in house in 1992 and updated annually." In fact, as Paul Good admitted, there were additional termite inspections in 1995 and 1997, following his complaints of possible termite infestation. Further, he had actual knowledge of termite damage to the basement steps that, as he conceded on cross-examination, was covered by a panel "so that it wasn't exposed all the time." (T. 101). Paul Good testified that he believed those matters were nevertheless encompassed in the representations he made.
 {¶ 48} Whether those matters were reasonably encompassed in the representations the Goods made in the Residential Property Disclosure Form was a question for the jury to decide. The jury's verdict portrays a finding on that matter that rejects Paul Good's stated belief. That those matters, which were known to the Goods, were improperly omitted from the representations they made is competent, credible evidence that the Goods failed to satisfy the duty of "honesty in fact" imposed on sellers by R.C. 5302.30(A)(1) and (E)(3). Also, because of those omissions, the positive implication created by the representations the Goods made that the termite problem was cured and that no damage existed is competent, credible evidence from which the jury could find that the McCoys justifiably relied on the Goods' misrepresentation of the facts to the detriment of the McCoys when they purchased the house from the Goods.
 {¶ 49} The fourth assignment of error is overruled.
 Conclusion {¶ 50} Having sustained the second and third assignments of error, we will reverse the award of $15,000 as and for punitive damages and modify the trial court's judgment to that extent. The award of $36,000 as and for compensatory damages and for cost of the action will be affirmed.
WOLFF, P.J. and FAIN, J., concur.
Copies mailed to:
Dina M. Carey, Esq. Richard E. Mayhall, Esq. Hon. Douglas M. Rastatter
[1] The Goods might have learned through discovery that the McCoys had no expert witnesses to present, and on that basis could have objected to use of the lay witness testimony to prove damages.