OPINION
{¶ 1} Defendant, Barbara Bauer, appeals from a judgment for $29,756.80 against her and in favor of Plaintiff, Jesse Reynolds.
 {¶ 2} Bauer is a real estate agent. In August of 2002, Reynolds listed her house for sale with Bauer and her broker, LeValley Realty, Inc. Subsequently, Bauer agreed to keep an eye on the property while Reynolds was away in South Carolina, caring for her terminally ill sister.
 {¶ 3} Reynolds's time away extended into the winter months of the following year. Because the gas heat in her house had been turned off, the water pipes in an upstairs bathroom froze and burst in late January or early February of 2003. The property was severely damaged as a result.
 {¶ 4} Angler Construction Company was hired to repair the damage to Reynolds' home. Angler Construction removed many of the appliances and much of the debris and rebuilt some of the walls and ceilings. However, Reynolds did not have enough money to pay Angler Construction to complete the repairs to her house. Consequently, Angler Construction stopped working before completing its restoration work.
 {¶ 5} On June 30, 2004, Reynolds commenced a civil action against Bauer and LeValley Realty, Inc. seeking to recover damages in excess of $40,000 to compensate her for the cost of repairs to her house. Reynolds' Complaint included claims for negligence, breach of contract, and intentional, reckless or negligent misrepresentations. Bauer and LeValley Realty, Inc. denied liability.
 {¶ 6} The case was tried to a jury from June 13 through June 15, 2005. Reynolds and several of her witnesses testified concerning what repairs that were made or proposed and the costs of those repairs. However, Reynolds was precluded by the trial court from calling an expert witness to opine that the costs she allegedly incurred to restore her house to its condition prior to the water damage were reasonable and necessary. The trial court based its ruling on Reynolds' failure to disclose the identity of her expert pursuant to the court's pretrial discovery orders. After completion of the testimony, Bauer moved for a directed verdict, arguing that Reynolds had failed to present evidence from which the jury could find that expenditures Reynolds made or would make were necessary and reasonable costs of restoration. The trial court denied the motion.
 {¶ 7} The jury returned a general verdict for Reynolds against Bauer for $29,756.80, and against LeValley Realty, Inc. for $7,439.20. The verdict was journalized on June 23, 2005 and amended on July 14, 2005. Bauer filed a timely notice of appeal on July 21, 2005.
 {¶ 8} FIRST ASSIGNMENT OF ERROR
 {¶ 9} "THE LOWER COURT ERRED IN OVERRULING APPELLANT'S MOTION FOR A DIRECTED VERDICT."
 {¶ 10} A motion for directed verdict should be sustained when "the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party,. . . ." Civ. R. 50(A)(4).
 {¶ 11} Bauer moved for a directed verdict on the issue of damages, arguing that Reynolds failed to present evidence from which a jury could award the damages Reynolds requested. Bauer relied, as she does on appeal, on the rule of Ohio Colleries Co.V. Cocke (1923), 107 Ohio St.3d 238, which held:
 {¶ 12} "[T]he owner of the [property] is entitled to recover, if the injury is of a permanent or irreparable nature, the difference in the market value of the property as a whole, including improvements thereon, before and after the injury. If restoration can be made, the measure of damages is the reasonable cost of restoration, plus the reasonable value of the loss of the use of the property between the time of the injury and the restoration, unless such cost of restoration exceeds the difference in the market value of the property as a whole before and after the injury, in which case the difference in the market value before and after the injury becomes the measure." Id., p. 240.
 {¶ 13} Reynolds testified regarding the value of her personal and real property before and after the water damage.
She testified to the repairs that were done to her house. She also submitted invoices reciting the costs incurred in repairing her house, and testified that she could not complete the restoration because she ran out of money. A number of pictures were introduced to the jury that showed the extensive damage to Reynolds' house. The jury also heard testimony regarding the water damage from the plumber Reynolds called when the broken pipes were discovered, and from a representative of Angler Construction who described the repair work performed on Reynolds' house. Bauer argues that Reynolds' failure to present expert testimony that the restoration costs Reynolds incurred were reasonable and necessary under the rule of Ohio Colleries
entitled Bauer to a directed verdict on Reynolds' claim for relief.
 {¶ 14} The Third District Court of Appeals was faced with similar facts in Shaw v. Toyotomi America, Inc. (Sept. 26, 1996), Marion App. No. 9-96-3. In Shaw, a defective kerosene heater manufactured by the defendant caused a fire that resulted in damage to, inter alia, the plaintiff's real and personal property. At trial, the defendant unsuccessfully moved for a directed verdict. After the jury returned a verdict in the plaintiff's favor, the defendant appealed, relying on Howard v.General Electric Co. (Sept. 16, 1991), Union App. No. 14-90-22, which held that an estimate of $189,755 in property damage as a result of a fire was not enough to show that the restoration of the property was reasonable or that it did not exceed the difference in market value before and after the damage. Bauer also cites Howard in support of her appeal.
 {¶ 15} The Shaw court distinguished Howard because the plaintiff in Shaw, unlike the plaintiff in Howard, testified regarding the value of her personal property before and after the fire, testified to the repairs proposed to restore her home, described the repairs that were done, explained that her limited resources prevented restoration of her home to its pre-fire condition, and testified that her home is in a condition of lesser quality than before the fire because the cost of full restoration was beyond her means. The Third District affirmed the damages award, stating:
 {¶ 16} "[T]he jury was entitled to weigh the testimony given by [the plaintiff] and determine whether the amounts were reasonable in making its judgment. As reasonable minds could come to differing opinions on the value of the property damaged, a directed verdict would have been improper in this case." Id.,
at ¶ 6.
 {¶ 17} We agree with the holding in Shaw. Evid.R. 601 provides that every person is competent to be a witness. Evid.R. 701 states:
 {¶ 18} "If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2)helpful to a clear understanding of his testimony or the determination of a fact in issue."
 {¶ 19} Evid.R. 701 does not create a positive requirement for expert testimony. It merely limits the testimony that may be elicited from lay witnesses. That testimony and any inferences to be drawn from it are admissible so long as the lay witness speaks from firsthand knowledge and "the opinion or inference advanced by the witness (is) one that a normal person would form on the basis of the observed facts."
 {¶ 20} Weissenberger's Ohio Evidence, Treatise (2006) Ed.), at section 701.3.
 {¶ 21} Evid.R. 702(A) states the justification for testimony by experts, which is that "[t]he witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons." That justification is concerned not with the competence of lay persons as witnesses but with the jury's inability to draw proper inferences from the facts in certain situations. Then, expert witness testimony is admissible because it is helpful to the jury's resolution of the fact or facts in issue.
 {¶ 22} Unlike Ohio Colleries, which involved the diminution in the value of a coal mine, Reynolds' claim involved a residential real property and damages to it. Jurors may be presumed to understand what defects make a property unhabitable or otherwise diminish the owner's enjoyment and use of it. Further, though the particular repairs undertaken to do that may not be ones with which jurors are specifically familiar, jurors are not so unable to draw proper inferences from the facts they hear that expert opinion testimony is needed in order for the jury to find that the costs incurred were reasonable and the repairs necessary.
 {¶ 23} A jury might reasonably infer from Reynolds' testimony and that of her other witnesses that the repairs to her house which were performed or are yet to be performed are necessary to restore the property to its prior condition. Further, whether the costs for that work that were incurred or proposed are reasonable is not a matter beyond the knowledge and experience possessed by lay persons, such that, in addition to the evidence of costs that Reynolds presented, an expert must testify that these costs are reasonable for the work that was done. Ultimately, Bauer had the opportunity to dispute both the necessity of repairs and the reasonableness of their costs through cross-examination and submission of rebuttal evidence. Curtis v. Vazquez, Ashtabula App. No. 2003-A-0027, 2003-Ohio-6224.
 {¶ 24} The first assignment of error is overruled.
 {¶ 25} SECOND ASSIGNMENT OF ERROR
 {¶ 26} "THE VERDICT AND JUDGMENT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 27} Bauer complains that with respect to several items of personal property that were destroyed, Reynolds failed to present evidence of their market value immediately prior to and after they were damaged, which is the proper measure of damages.Falter v. Toledo (1959), 169 Ohio St. 238. However,
 {¶ 28} even if Reynolds' evidence was insufficient in that respect, we are unable to find that the jury necessarily relied on it.
 {¶ 29} The verdict for $29,756.80 the jury returned against Bauer was a general verdict. The jury was not asked to return special interrogatories apportioning the damages it awarded between the real and personal properties that were damaged, or among the items of personal property for which damages were awarded. Therefore, any finding we might make that the verdict is unsupported to the extent that Bauer claims would be purely speculative.
 {¶ 30} The second assignment of error is overruled. The judgment of the trial court will be affirmed.
Brogan, J. and Donovan, J., concur.