QUINT, Appellant and Cross–Appellee,

v.

LOMAKOSKI, Appellee and Cross–Appellant.

[Cite as *Quint v. Lomakoski,* 173 Ohio App.3d 146, 2007-Ohio-4722.]

Court of Appeals of Ohio,  
Second District, Greene County.

No. 06–CA–99.

Decided Sept. 14, 2007.

Victor A. Hodge, for appellant and cross-appellee.

Mark J. Donatelli, for appellee and cross-appellant.

GRADY, Judge.

{¶ 1} This cause is before us for a third time. Plaintiff, Deborah Pelligrini (f.k.a. Quint), appeals from an order of the domestic relations court establishing a temporary order of visitation and finding her in contempt of the trial court's September 18, 2003 parenting plan order. Defendant, David Lomakoski, cross-appeals from the portion of the order requiring him to pay child support.

{¶ 2} The parties were married in 1995, and they were divorced in 2001 in Michigan. Their divorce decree provided for joint custody of their son, Gavin, who was born in 1999. The parties later moved to Beavercreek in Greene County, where they registered their divorce decree.

{¶ 3} In September 2003, the parties executed a parenting plan and parenting-time schedule in which they agreed that Pelligrini would be the residential parent and custodial parent of their son and that Lomakoski would have parenting time that included overnight visitation on Tuesdays, dinner on Wednesdays, and every other Friday through Monday morning. The trial court adopted the parenting plan in a September 18, 2003 order.

{¶ 4} In early 2004, Pelligrini moved from Beavercreek to her cousin's residence in Hilliard. She then moved for a short time to Cincinnati. While she lived in Hilliard and Cincinnati, Lomakoski had to drive further distances to meet Pelligrini in order to pick up his son for visitation.

{¶ 5} In June 2004, Pelligrini filed a notice of intent to relocate to North Carolina, along with a motion to modify visitation. Lomakoski opposed the motion to modify visitation. The trial court denied Pelligrini's motion on a finding that the move to North Carolina was not in the child's best interest. Pelligrini appealed the trial court's decision. On September 2, 2005, we reversed, holding that the trial court had abused its discretion, stating: "[T]he trial court improperly determined that the child should not be relocated, when it should have limited its inquiry to whether visitation should be effectuated in a different manner." We remanded the matter for further proceedings.

{¶ 6} On September 14, 2005, without further hearing, the trial court modified Lomakoski's visitation, consistent with the guardian ad litem's recommendation. Pelligrini appealed the trial court's modification of visitation. On June 16, 2006, we concluded that the trial court abused its discretion by issuing a modified visitation schedule without holding an evidentiary hearing to determine the applicability of the factors in R.C. 3109.051(D). We reversed the trial court's order and remanded the matter for further proceedings.

{¶ 7} While the second appeal was pending, the trial court held a hearing on March 15, 2006 to determine motions, including Pelligrini's motion for child support and Lomakoski's motions for contempt. On August 9, 2006, the trial court found Pelligrini in contempt of the September 18, 2003 parenting plan for failing to provide the scheduled parenting time to Lomakoski on March 1, 2005, March 4, 2005, and June 17, 2005. The trial court also ordered Lomakoski to pay child support and made the order retroactive to March 9, 2005, the date on which Pelligrini filed her motion for child support. Finally, the trial court issued a temporary order of visitation that was virtually identical to the order of visitation that we reversed in our June 16, 2006 decision.

{¶ 8} Pelligrini filed a timely notice of appeal. Lomakoski filed a timely notice of cross-appeal.

Pelligrini Appeal

## FIRST ASSIGNMENT OF ERROR

{¶ 9} "The trial court's finding of contempt is contrary to law."

{¶ 10} A person who disobeys or resists "a lawful writ, process, order, rule, judgment, or command of a court" may be punished as for a contempt. R.C. 2705.02(A).

{¶ 11} Pelligrini argues that the trial court's finding that she was in contempt of the September 18, 2003 parenting-plan order is contrary to law because the parenting-plan order was effectively vacated by the subsequent decisions of the trial court and of this court. We do not agree.

{¶ 12} Our prior decisions did not vacate the September 18, 2003 parenting-plan order. Our September 2, 2005 decision remanded the cause for the trial court to reconsider Pelligrini's motion for modification of visitation and to determine whether a modification of visitation, upon relocation to North Carolina, was in the child's best interest. Nothing in our September 2, 2005 decision vacated the September 18, 2003 order.

{¶ 13} In our June 16, 2006 decision, we noted that a modification of the September 18, 2003 order was necessary to ensure that the child has adequate time with Lomakoski, but we held that the schedule as modified by the trial court was onerous and unreasonable for Pelligrini and the child. We held that the trial court erred in modifying the September 18, 2003 order without gathering sufficient facts to make a proper application of the factors in R.C. 3109.051(D). Nothing in our June 16, 2006 decision vacated the September 18, 2003 order.

{¶ 14} The September 18, 2003 order was lawful at the time that Pelligrini's contumacious conduct took place on March 1, and 4, and June 17, 2005. Therefore, the trial court's finding of contempt was not contrary to law.

{¶ 15} The first assignment of error is overruled.

SECOND ASSIGNMENT OF ERROR

■ {¶ 16} "The trial court's finding of contempt is contrary to the facts and weight of evidence."

{¶ 17} In its August 9, 2006 order, the trial court found Pelligrini in contempt for failing to facilitate parenting time on March 1, 2005, shortening parenting time on March 4, 2005, and failing to provide parenting time on June 17, 2005. The trial court sentenced Pelligrini to 30 days in jail, but suspended the sentence on the conditions that Pelligrini provides two extra days of parenting time and continues to follow the current parenting-time orders. The trial court also ordered the payment of $500 in attorney fees.

{¶ 18} Pelligrini argues that the trial court's finding of contempt is contrary to the facts and the weight of the evidence. According to Pelligrini, the trial court's findings of contempt are not supported by clear and convincing, competent, credible evidence.

{¶ 19} According to Lomakoski, he lost approximately 45 minutes of visitation on March 1, 2005, because he had to drive further to pick up his son. The increased driving time resulted from Pelligrini's move from Beavercreek to her cousin's residence in Hilliard. But Lomakoski did not testify that the increased driving time took place after his visitation hours began. Rather, he testified that he often would pick Gavin up earlier, between 3:00 and 5:00 p.m., than when his visitation officially began pursuant to the September 18, 2003 order, 6:00 p.m.

{¶ 20} The trial court found that Pelligrini provided shortened parenting time on March 4, 2005. A review of the transcript from the March 15, 2006 hearing, however, does not support this finding. Lomakoski did not testify that Pelligrini shortened his parenting time on March 4, 2005.

{¶ 21} Regarding the lost parenting time on June 17, 2005, Pelligrini testified that she had to work that day, and she spoke with Lomakoski to work out providing extra time in July in exchange for not providing parenting time on June 17, 2005. Lomakoski testified that Pelligrini informed him that she was in North Carolina and could not take that day off from work.

{¶ 22} It is clear that the parties, through verbal agreement, sometimes strayed from the precise terms of the visitation order. Informal, temporary modifications of parenting orders are a common occurrence in today's society as children grow older and become involved in more activities and as job responsibilities of parents change. Occasionally a child's activities or a parent's work commitments change at the last minute and require corresponding changes to a static parenting order. In order to effectively deal with such last minute changes, however, both parents need to be open to communication and flexible enough to accommodate the needs of the other parent and the child. This is not always the case.

{¶ 23} The preferred practice would be to plan far enough in advance to either work things out informally or to formally move the court for a modification of visitation. We acknowledge, however, that parents understandably want to avoid the costs and delays of going to court every time life situations necessitate a short-term or one-time change in the visitation schedule and that there are occasionally last-minute circumstances that make it impractical, if not impossible, to file a motion for modification in advance. The situation becomes even more complicated where, as here, the custodial parent has moved out of state, and the visitation order appears to be in a state of flux, as the trial court's order regarding visitation was twice reversed on appeal.

{¶ 24} Keeping this general background in mind, we now address the trial court's finding of contempt. The essential element of a contempt proceeding is that the person facing contempt charges has obstructed the administration of justice in some manner. *State v. Kimbler* (1986), 31 Ohio App.3d 147, 151, 31 OBR 236, 509 N.E.2d 99. Technical violations of a court order do not necessarily require a finding of contempt. *Miller v. Miller*, Henry App. No. 7–03–09, 2004-Ohio-2358, 2004 WL 1049158, ¶ 12.

{¶ 25} Based upon the record before us, we believe the trial court abused its discretion in finding Pelligrini in contempt of the September 18, 2003 order. The alleged contempt on March 4, 2005 is not supported by the record. Moreover,

the March 1, 2005 alleged loss of 45 minutes is at best a technical violation that was less than adequately supported by the testimony of Lomakoski.

{¶ 26} The June 17, 2005 loss of visitation is a closer issue. But we believe that the testimony and unique circumstances of this case weigh strongly against a finding of contempt. As of that date, Pelligrini was working in North Carolina. The denial of Pelligrini's motion for modification of visitation was pending on appeal before this court. It is uncontroverted that Pelligrini was unable to take June 17, 2005 off from work. According to Pelligrini's testimony, she worked with Lomakoski to provide additional parenting time to him to make up for this missed day. The trial court found that Lomakoski received additional parenting time on July 4, 2005, August 23, 2005, and August 26, 2005. Further, Pelligrini testified that she provided approximately 156 hours of visitation in addition to those required by the parenting order between March and mid-August of 2005. Finally, we note that Pelligrini has complied in full with the trial court's visitation orders since September 14, 2005, often at significant financial expense to her.

{¶ 27} Based upon the record before us, we conclude that the trial court abused its discretion in holding Pelligrini in contempt of its September 18, 2003 order. The second assignment of error is sustained.

THIRD ASSIGNMENT OF ERROR

{¶ 28} "The trial court abused its discretion by issuing an interim visitation order that this court had already declared onerous and unreasonable."

{¶ 29} At oral argument, counsel for Pelligrini stated that the temporary order of visitation from which Pelligrini appeals is no longer in place, and Pelligrini is no longer prejudiced by the temporary order of visitation. According to Pelligrini's counsel, a permanent order of visitation has been issued by the trial court, and Pelligrini has decided not to appeal the permanent order.

{¶ 30} Given Pelligrini's concessions at oral argument, the third assignment of error is overruled as moot.

Lomakoski Cross–Appeal

ASSIGNMENT OF ERROR

{¶ 31} "The trial court incorrectly established and computed child support and improperly made such order of support retroactive."

{¶ 32} In the September 18, 2003 order, the parties originally agreed to no child support:

{¶ 33} "At present, Father/Obligor is unemployed but is seeking employment. Due to the present disparity in the parties' incomes, Mother waives her right to obtain child support from the Father in consideration of being entitled to claim

Gavin as an income tax dependency exemption for federal and state income taxes in 2003 and each subsequent year. Notwithstanding the foregoing, the provision of child support remains subject to further order of the Court with the understanding that Mother would not be seeking child support absent a substantial and significant change in circumstances. Still further, it is understood by the parties that Father's obtaining an entry to mid-level employment position would not equal a substantial and significant change in circumstances.

{¶ 34} "In the event a substantial and significant change in circumstances does occur, Father's potential child support obligation to Mother shall be determined pursuant to the Child Support Guidelines adopted by the State of Ohio * * *."

{¶ 35} Pelligrini moved for child support in March 2005. The trial court, in its August 9, 2006 order, found that there had been a significant change in condition and awarded child support to Pelligrini, retroactive to March 9, 2005, the date of Pelligrini's motion. Lomakoski argues that the trial court should not have granted Pelligrini's motion for child support. We do not agree.

{¶ 36} R.C. 3119.79(A) provides:

{¶ 37} "If an obligor or obligee under a child support order requests that the court modify the amount of support required to be paid pursuant to the child support order, the court shall recalculate the amount of support that would be required to be paid under the child support order in accordance with the schedule and the applicable worksheet through the line establishing the actual annual obligation. If that amount as recalculated is more than ten per cent greater than or more than ten per cent less than the amount of child support required to be paid pursuant to the existing child support order, the deviation form the recalculated amount that would be required to paid under the schedule and the applicable worksheet shall be considered by the court as a change of circumstance substantial enough to require a modification of the child support amount."

{¶ 38} Whether a court is establishing an initial child-support order or whether the court is modifying an order based on an agreement between the parties that does not include an order of the payment of child support, the court must apply the child-support guidelines, unless a deviation is appropriate and is accompanied by findings of fact supporting the deviation. *DePalmo v. DePalmo* (1997), 78 Ohio St.3d 535, 540, 679 N.E.2d 266. "[T]he amount of child support payable according to the Child Support Guidelines is rebuttably presumed to be the correct amount of support due, even in a case where, as here, child support is being requested after the parties initially agreed that the amount of support to be paid would be zero." *Cameron v. Cameron,* Franklin App. No. 04AP-687, 2005-Ohio-2435, 2005 WL 1177915, ¶ 18, citing *DePalmo.*

{¶ 39} Lomakoski argues that his income from his painting business did not amount to a change in circumstances that warranted the establishment of a child-support order. We do not agree. Lomakoski testified that his painting business produced approximately $13,000 of net income in 2005 and that his total adjusted gross income was over $16,000. The income from Lomakoski's painting business was sufficient to constitute a substantial change in circumstances under R.C. 3119.79(A). *Rhoades v. Rhoades,* Franklin App. No. 06AP–740, 2007-Ohio-2243, 2007 WL 1377211, ¶ 10, holding that a $7,293 increase in an obligor's income was sufficient by itself to support the finding that a substantial change in circumstances has occurred under R.C. 3119.79(A).

{¶ 40} Lomakoski also argues that the trial court erred in granting child support because the September 18, 2003 order stated that Pelligrini would seek child support only if a substantial and significant change in circumstances occurred, and that an entry to a mid-level employment position would not establish a significant and substantial change in circumstances. But the parties' prior agreement cannot override the trial court's duty to review the child-support issue when one of the parties requests child support. As the Supreme Court explained in *DePalmo* :

{¶ 41} "The [trial court's] entry appeared to be merely a rubber-stamping of an agreement between the parents which waived support from [the mother] * * *. The law favors settlements. However, the difficult issue of child support may result in agreements that are suspect. In custody battles, choices are made, and compromises as to child support may be reached for the sake of peace or as a result of unequal bargaining power or economic pressures. The compromises may be in the best interests of the parents but not of the child. Thus, the legislature has assigned the court to act as the child's watchdog in the matter of support." *DePalmo,* 78 Ohio St.3d at 539–540, 679 N.E.2d 266, citing *Martin v. Martin* (1993), 66 Ohio St.3d 110, 115, 609 N.E.2d 537.

{¶ 42} Although Lomakoski and Pelligrini previously agreed to no child support, Pelligrini's motion for child support invoked anew the trial court's obligation to begin with the rebuttable presumption that guideline child support was in the child's best interests. *Cameron,* 2005-Ohio-2435, 2005 WL 1177915, at ¶ 22. Therefore, the trial court did not err in finding that child support could be awarded pursuant to the guidelines.

{¶ 43} Lomakoski also argues that the trial court erred in its calculation of the amount of child support by not calculating the actual expenses incurred in Lomakoski's painting business, as required by line 2b of the child-support-computation worksheet. We agree.

{¶ 44} "In any action in which a court child support order is issued or modified * * * the court or agency shall calculate the amount of the obligor's child support obligation in accordance with the basic child support schedule, the applicable worksheet, and the other provisions of sections 3119.02 to 3119.24 of the Revised Code." R.C. 3119.02.

{¶ 45} It is undisputed that Lomakoski received most of his income in 2005 from his painting business. In order to determine self-employment income, the child-support-computation worksheet requires an analysis of two key components: (1) gross receipts from the business and (2) ordinary and necessary business expenses. R.C. 3119.022, 3119.023.

{¶ 46} In its August 9, 2006 order, the trial court credited Lomakoski with $40,000 in gross receipts from his business, but did not subtract any ordinary and necessary business expenses. At the March 15, 2006 evidentiary hearing, Lomakoski testified that he had adjusted gross income in 2005 of approximately $16,437, which included income from North American Security Solutions, unemployment benefits, and about $13,000 from his painting business. He testified that he earned about $43,000 in gross receipts from his painting, but his expenses reduced the adjusted income from painting to about $13,000. He submitted his tax return for the year 2005 in support of his testimony.

{¶ 47} Upon further questioning by the trial court, Lomakoski testified that he hoped his earnings in 2006 from his painting business would reach about $40,000. It appears that the trial court used this testimony from Lomakoski to insert $40,000 into the "gross receipts" portion of the child-support-calculation worksheet. The trial court, however, did not include any amount in the ordinary expenses section of the worksheet, despite Lomakoski's testimony and 2005 tax return.

{¶ 48} It was an abuse of discretion for the trial court to ignore the evidence of Lomakoski's business expenses, which then skewed the trial court's child-support calculation. The trial court erroneously used $40,000 as Lomakoski's adjusted gross income when he made substantially less than that in 2005. Therefore, we must reverse the trial court's calculation of child support and remand this cause to the trial court for a recalculation of child support that takes into consideration Lomakoski's ordinary and necessary business expenses.

{¶ 49} Finally, Lomakoski argues that the trial court erred in making the child-support order retroactive to the date on which Pelligrini filed her motion. We do not agree. If a court determines that a support order should be modified, it may make the modification order effective from the date the motion for modification was filed. *Murphy v. Murphy* (1984), 13 Ohio App.3d 388, 389, 13 OBR 471, 469 N.E.2d 564. Indeed, "[a]bsent some special circumstance, an

order of a trial court modifying child support should be retroactive to the date such modification was first requested." *State ex rel. Draiss v. Draiss* (1990), 70 Ohio App.3d 418, 421, 591 N.E.2d 354. Any other holding might produce an inequitable result in view of the substantial time it frequently takes the trial court to dispose of motions to modify child-support obligations. *Murphy,* 13 Ohio App.3d at 389, 13 OBR 471, 469 N.E.2d 564.

{¶ 50} Lomakoski concedes that the trial court may issue a child-support order that is retroactive to the date of the filing of a motion by the person requesting child support, but argues that it was improper for the trial court to delay a hearing on the motion for support, which created an arrearage of over $6,000 on the date the trial court issued the retroactive support order. Although we agree that such lengthy delays should be avoided, if possible, the delay does not in itself excuse Lomakoski from paying child support. An increased financial burden does not establish a "special circumstance."

{¶ 51} That said, we do share Lomakoski's concerns that a delayed order of retroactive child support after a party files a motion to establish child support may work a severe hardship on an obligor. In such an instance, the trial court should provide for some type of payment plan so that an obligor without sufficient resources is not required to pay the entire amount of retroactive child support in one lump sum.

{¶ 52} Lomakoski's cross-assignment of error is sustained.

{¶ 53} The judgment of the trial court is reversed in part and affirmed in part, and the cause is remanded for further proceedings consistent with this opinion.

> Judgment affirmed in part
> and reversed in part,
> and cause remanded.

BROGAN and WALTERS, JJ., concur.

SUMNER E. WALTERS, J., retired from the Third Appellate District, sitting by assignment.