OPINION
{¶ 1} Plaintiff-appellant Jack Maier appeals from a Civ. R. 41(B)(2) judgment of dismissal rendered by the trial court after the conclusion of the evidence that Maier presented against defendants-appellees James and Angie Shields. Maier contends that the trial court erred by requiring him to prove the fair market value of his rental property *Page 2 
before and after James and Angie allegedly damaged the property.[1]
Maier also contends that the trial court committed various procedural errors, including allowing an answer to be filed in an untimely fashion, and granting the motion to dismiss as to co-defendant James Shields, when James did not move for dismissal. Finally, Maier contends that the trial court should have granted equitable relief.
 {¶ 2} Because Maier failed to file a transcript of the magistrate's hearing prior to the time the trial court overruled his objection and rendered judgment, appellate review is limited to a determination of whether the trial court abused its discretion in applying the pertinent law to the magistrate's findings of fact. The trial court did not abuse its discretion in dismissing Maier's claim for damages. The trial court properly followed the controlling law in this appellate district. Furthermore, Maier waived the remaining assignments of error by failing to raise the alleged errors when he objected to the magistrate's decision. The plain error doctrine also does not apply, because Maier received a full and fair opportunity to litigate his claims, and it cannot be demonstrated from this record that the result would clearly have been otherwise had the alleged errors not occurred. Accordingly, the judgment of the trial court is Affirmed.
 I {¶ 3} In June 2006, Maier filed a complaint in municipal court against James and Angie Shields, alleging that they were responsible for $5,984.68 in repairs made to property they had rented from Maier. Both James and Angie were served in early July 2006. Shortly thereafter, James filed a letter with the trial court, denying liability. *Page 3 
Counsel for James then entered an appearance. Angie failed to file an answer within twenty-eight days of service, but Maier did not file a motion for default judgment. In mid-August 2006, Angie's attorney entered an appearance and requested leave to file an answer out of time. The trial court granted the motion, and Angie filed an answer in early September 2006.
 {¶ 4} Trial was held before a magistrate, where Maier presented only his own testimony. Maier did not file a transcript of the magistrate's hearing until after his objections were overruled and the trial court adopted the magistrate's decision as the judgment of the trial court. Therefore, the trial court was not able to use the transcript in ruling on the objections, and we are limited to the facts set forth in the decisions of the magistrate and trial court.
 {¶ 5} According to the magistrate, Maier testified that he paid the following sums to repair the property: $1,300 for painting and patching; $86.98 for fixing the spouting; $17.55 for replacing drawer hardware; $82.28 for cleaning products; $21.42 for new keys; $3,906.47 for replacement of urine-stained carpet; $4.23 for a fence post; $126.95 for a carpet steamer; and $126.95 for various matters like replacement of light bulbs. The rent for the premises was $400 per month, and James and Angie were current in their rent when they vacated the rental property.
 {¶ 6} Maier did not testify about the fair market value of the rental property before or after the alleged damage. He did state that Angie never returned the keys to the premises and that the wood beneath the carpet was soaked with urine. Maier also indicated that James and Angie did not owe any money for unpaid rent.
 {¶ 7} After Maier rested, James and Angie jointly moved for a directed verdict *Page 4 
under Civ. R. 50, contending that Maier was precluded from recovering restoration costs, because he failed to show the diminution in the fair market value of the property resulting from the injury occurring during their tenancy. The magistrate subsequently issued a decision, concluding that the motion should properly be considered as a motion to dismiss under Civ. R. 41(B)(2), since no jury had been empaneled and the matter was tried to the court.
 {¶ 8} The magistrate noted that existing case law requires evidence of diminution in the value of the real estate in order to determine if the costs of repair are greater than the loss of value. The magistrate cited cases from the Second District Court of Appeals holding that recoverable restoration costs are limited to the difference between the pre-injury and post-injury fair-market value of the property. Since Maier failed to present the requisite evidence of fair-market value, the magistrate concluded that he could not determine whether the actual costs of repair were equal to or greater than the loss of value of the property. Therefore, the magistrate granted the Civ. R. 41(B)(2) motion to dismiss.
 {¶ 9} Maier filed objections to the magistrate's decision, but the objections were overruled by the trial court. The court noted that Maier had failed to file a transcript of the trial. However, the court concluded that it could make a determination on the merits after reviewing the magistrate's notes and entry, the objection to the magistrate's decision, and the responses to the decision. The trial court found no error in the magistrate's decision, and ordered the action dismissed under Civ. R. 41. Maier appeals from the judgment.
 II *Page 5 {¶ 10} Maier's First Assignment of Error is as follows:
 {¶ 11} "THE TRIER OF FACT ERRED AS A MATTER OF LAW IN RIGIDLY APPLYING THE GENERAL RULE UNDER OHIO COLLIERIES TO A RESIDENTIAL RENTAL PROPERTY WHERE TESTIMONY WAS GIVEN REGARDING THE VERIFIABLE COSTS OF REPAIR."
 {¶ 12} Under this assignment of error, Maier contends that the trial court erred as a matter of law in dismissing the action. According to Maier, the trial court improperly disregarded testimony about the verifiable cost of repair, and too rigidly applied the general rule for damage to residential real property.
 {¶ 13} The trial court dismissed Maier's claims pursuant to Civ. R. 41(B)(2), which provides that:
 {¶ 14} "After the plaintiff, in an action tried by the court without a jury, has completed the presentation of the plaintiff's evidence, the defendant, without waiving the right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in Civ. R. 52 if requested to do so by any party."
 {¶ 15} When a defendant moves for dismissal under Civ. R. 41(B)(2), "the trial court's role is `to weigh the evidence, resolve any conflicts therein, and render judgment for the defendant if the plaintiff has shown no right to relief.'" Pacher v. Invisible Fence of Dayton,154 Ohio App.3d 744, 751, 2003-Ohio-5333, 798 N.E.2d 1121, at ¶ 29 *Page 6 
(citation omitted). In such situations, the trial court's only consideration is "`whether the plaintiff has made out his case by a preponderance of the evidence.'" Id. Appellate review of dissmissal orders is limited, as "we can set aside the dismissal of a case under Civ. R. 41(B)(2) `only if erroneous as a matter of law or against the manifest weight of the evidence.'" Id. at ¶ 31 (citation omitted).
 {¶ 16} Our review power is even more restricted in the present case, because Maier failed to file a transcript of the hearing until after the trial court entered judgment. In these situations, we have held that:
 {¶ 17} "[W]hen the party objecting to a magistrate's decision fails to supply a transcript to the trial court, the appellate court is precluded from considering the transcript submitted with the appellate record Instead, the appellate court must accept the magistrate's findings of fact as established and appellant may not attack those findings on appeal As a result, the appellate court's review is limited to whether the trial court abused its discretion in adopting the magistrate's decision. * * * An abuse of discretion implies that the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. * * * Therefore, as we examine each assignment of error raised * * *, we will determine if the trial court abused its discretion in applying the applicable law to the magistrate's findings of fact." Jones v. Davenport (Jan. 26, 2001), Montgomery App. No. 18162,2001 WL 62513, * 1 (citations omitted). Accord Sutherland v.Lasson, Montgomery App. No. 20217, 2004-Ohio-5834, at ¶ 39, andBaddour v. Rehab. Serv. Comm., Franklin App. No. 04AP-1090,2005-Ohio-5698, at ¶ 26.
 {¶ 18} We conclude that the trial court did not abuse its discretion, because the *Page 7 
trial court and magistrate followed established law in this appellate district on proof of damages. We have noted on a number of occasions that where an injury is temporary and susceptible to repair, the general rule is that a "landowner may recover the reasonable cost of restoration, plus the reasonable value of the loss of the use of the property between the time of the injury and the restoration." Reeser v.Weaver Bros., Inc. (1992), 78 Ohio App.3d 681, 686, 605 N.E.2d 1271, citing Ohio Collieries Co. v. Cocke (1923), 107 Ohio St. 238, 248, 140 N.E. 356. In Reeser, we analyzed developments in the law after OhioCollieries, and acknowledged that in certain situations the reasonable cost of restoration might exceed the difference between the land's value before and after an injury. We stressed, however, that the differential in value still remained "the touchstone of the reasonableness determination," and that "evidence of the property's fair market value before and after the injury is required in order to assess whether the restoration costs sought are reasonable." 78 Ohio App.3d 681, 689. Accordingly, we held in Reeser that:
 {¶ 19} "[A]s a general rule, a landowner whose real property has suffered a temporary injury is entitled to recover reasonable restoration costs, plus the reasonable value of the loss of use of the property between the injury and the restoration. However, recovery is circumscribed by the limitation that the recoverable restoration cost cannot exceed the difference between the pre-injury and post-injury fair market value of the real property. In other words, as to restoration costs, when restoration costs exceed the diminution in fair market value, the diminution of fair market value becomes the measure of damages. Such recovery necessarily requires evidence of the pre-injury and post-injury market value of the injured real property. Moreover, the party seeking *Page 8 
restoration costs bears the burden of establishing the diminution in the property's fair market value." Id. at 691-92 (citation omitted).
 {¶ 20} Because the plaintiff in Reeser failed to provide evidence of the pre-and post-injury market value of the property, we upheld the trial court's determination that the plaintiff was not entitled to recover restoration costs. Id., at 692. We followed the same general rule in Jones v. Dayton Power Light Co. (Dec. 14, 1994), Greene App. No. 94-CA-49, 1994 WL 702062, * 2. In Jones, we noted an exception to this rule, where "restoration costs may be recovered in excess of diminution in fair market value when real estate is held for non-commercial use, when there are reasons personal to the owner for seeking restoration, and when the diminution in fair market value does not adequately compensate the owner for the harm done." Id.
 {¶ 21} The circumstances outlined in Jones do not apply to the present case, since Maier held the real estate for a business use. While the property itself was residential, Maier was not using the property for his own residence, but was renting it to others — presumably for a profit. Maier also did not present evidence of personal reasons for seeking restoration in excess of any diminution in fair market value, nor did he present any evidence about the fair market value at all. Under the circumstances, the trial court could not possibly have concluded that the exception in Jones would even apply.
 {¶ 22} We continued to follow the general rule in Zartman v.Schepman (Sept. 17, 1999), Montgomery App. No. 17634, 1999 WL 33595145. In Zartman, we held that a landlord did not prove damages because she failed to offer any evidence on diminution in the property's fair market value resulting from injuries that occurred during the *Page 9 
defendant's tenancy. Id. at * 1.
 {¶ 23} Maier contends that our district has subsequently created a distinction between commercial and residential property that would eliminate the requirement of testimony on diminution in value in residential cases. The case that Maier cites for this proposition isReynolds v. Bauer, Montgomery App. No. 21179, 2006-Ohio-2912.
 {¶ 24} In Reynolds, a residential property owner sued a real estate agent who was supposed to be caring for the home while the owner was out of town. Due to the agent's alleged negligence, water pipes froze and broke, causing substantial damage to the property. The plaintiff and other witnesses testified about the cost of repairs, but the plaintiff did not present expert testimony. This was due to the fact that the plaintiff had failed to properly disclose the expert. At the conclusion of the evidence, the defendant moved for a directed verdict, based on the plaintiffs failure to prove that the repairs were reasonable and necessary costs of restoration. The trial court overruled the motion and the jury subsequently awarded damages against the agent of approximately $29,756. Id. at ¶ 1-7.
 {¶ 25} On appeal, the defendant contended that the trial court should have granted a directed verdict because the plaintiff failed to comply with the standard for proving damages for restoration under OhioCollieries. We distinguished Ohio Collieries, stating that:
 {¶ 26} "Unlike Ohio Collieries, which involved the diminution in the value of a coal mine, Reynolds' claim involved a residential real property and damages to it. Jurors may be presumed to understand what defects make a property unhabitable or otherwise diminish the owner's enjoyment and use of it. Further, though the particular repairs *Page 10 
undertaken to do that may not be ones with which jurors are specifically familiar, jurors are not so unable to draw proper inferences from the facts they hear that expert opinion testimony is needed in order for the jury to find that the costs incurred were reasonable and the repairs necessary." Id. at ¶ 22.
 {¶ 27} As a preliminary point, we note that the above distinction ofOhio Collieries is inaccurate. Contrary to our statement inReynolds, Ohio Collieries did not involve diminution in the value of a coal mine. In Ohio Collieries, the plaintiffs owned 20 acres of land and the defendant coal company owned the coal lying underneath the premises. The plaintiffs brought suit against the company because the company had removed pillars under the ground. This allegedly caused subsidence in the land surface, caused the plaintiffs dwelling house to be out of plumb, and caused the plaintiffs well to go dry. 107 Ohio St. 238,243-242.
 {¶ 28} The Ohio Supreme Court noted that two types of damages could potentially be obtained for this type of injury — either damages for permanent injury where the property could not be repaired, or damages for the costs of repair. In the latter situation, the court outlined the general standard that was later applied in Reeser. This standard allowed the injured party to recover the cost of restoration, unless the cost exceeded the difference in the value of the property before and after the injury. Id. at 249.
 {¶ 29} After reviewing the facts, the Ohio Supreme Court indicated that restoration cost was appropriate. The court noted that the value had not been totally destroyed because the plaintiff and her son were still using the property. Id. Accordingly, Ohio Collieries was not based on damage to a coal mine. *Page 11 
 {¶ 30} More importantly, Reynolds did not depart from the general standards we have applied, because the plaintiff in Reynolds did, in fact, testify as to the value of her personal and real property before and after the damage. 2006-Ohio-2912, at ¶ 13.
 {¶ 31} The issue in Reynolds was whether the plaintiff had failed to prove her damages because she did not present expert testimony on restoration costs. In the course of discussing this issue, we made the comments noted above, to the effect that a jury can reasonably understand repairs and their necessity without expert testimony. Id. at ¶ 22-23. This is consistent with other authority in our district, which holds that property owners are competent to testify as to the value of their property and that their testimony alone is sufficient to establish value. In addition, property owners are competent to give the factual basis for their opinions. See, e.g., Leppla v. Sprintcom, Inc.,156 Ohio App.3d 498, 509, 2004-Ohio-1309, 806 N.E.2d 1019, at ¶ 25.
 {¶ 32} The fact that juries or trial courts can understand the need for repairs without expert testimony does not alter the concept that a touchstone is needed against which testimony about restoration costs can be weighed. A property owner could choose to upgrade a rental home far in excess of the actual diminution in value caused by a tenant's actions. An owner also controls the materials chosen and the work that is performed. Requiring a property owner to provide testimony about diminution in value and the basis for his or her opinion simply aids the analysis of whether claimed restoration costs are reasonable.Reeser, 78 Ohio App.3d 681, 686.
 {¶ 33} Maier suggests that Ohio courts have "refined" the rule inOhio Collieries and that diminution no longer serves as an absolute limit to recovery. We agree with this statement in general. We noted long ago in Jones that an exception exists that *Page 12 
allows parties to recover in excess of the diminution in fair market value where the property is non-commercial, the owner has personal reasons for seeking restoration, and the diminution does not adequately compensate the owner for the harm done. 1994 WL 702062, *2. However, in order to apply this exception, one would need to know what the diminution in value is, and, of course, there would have to be proof of the personal reasons for seeking restoration, which is lacking in the case before us.
 {¶ 34} Maier also cites several other cases in his brief, and argues us to follow the more modern rule. The primary case that Maier relies on is the decision of the Eleventh District Court of Appeals in Curtis v.Vazquez, Ashtabula App. No. 2003-A-0027, 2003-Ohio-6624. Like Maier, the landlord in Curtis failed to present evidence at trial about diminution in fair market value. As a result, the trial court rejected the landlord's claim for damages. Id. at ¶ 9.
 {¶ 35} On appeal, the Eleventh District noted the general rule on damages that originated in Ohio Collieries and that was applied inReeser. Id. at ¶ 16-17. However, the Eleventh District distinguishedReeser, based on the fact that the alleged damages involved restoration costs to a lake, "which stood a legitimate probability of exceeding the diminution in market value of the property." The Eleventh District contrasted that situation with the case at hand, which involved repair costs to the interior of a rental unit. In this regard, the Eleventh District observed that the "chance that the repair costs to the apartment significantly exceed the diminution in market value is slim." Id.
 {¶ 36} The Eleventh District also noted that the Eighth District had "extended" Reeser to a landlord-tenant situation. However, the Eleventh District declined to adopt the view of the Eighth District, noting that it had previously held that "`courts have *Page 13 
moved away from a rigid "comparison of market values" test towards a test of "reasonableness."'" Id. at ¶ 24, citing Martin v. Miller (Mar. 23, 2001), 11th Dist. No. 2000-T-0027, 2001 WL 285835. The Eleventh District also reasoned that:
 {¶ 37} "Requiring, as a rule, a landlord to submit evidence regarding the pre-injury and post-injury market value of a rental property is impractical. In many cases, landlords are seeking to repair the apartment in order to re-rent the unit. It is unreasonable to require them, as a concrete rule, to expend the financial resources to submit expert testimony regarding the pre-injury and post-injury market value of the property. In some cases, this cost may even exceed the cost to repair the damage!
 {¶ 38} "This holding does not detract from the general rule set forth in Ohio Collieries Co., that a property owner is only entitled to the lesser of the cost of repair and the difference in market value. However, the defendant may produce evidence of the difference in market value. In addition, the defendant may move the court to require the plaintiff to produce such evidence. Then, at the trial court's discretion, the plaintiff may be required to produce evidence regarding pre-injury and post-injury market value." Id. at ¶ 28-29.
 {¶ 39} We are not persuaded by the analysis in Curtis. As an initial matter, Curtis failed to consider that Ohio Collieries applied the general rule on restoration in a non-commercial setting, where the plaintiffs were residential property-owners seeking to obtain damages for injury to their property. The burden on the plaintiffs to establish diminution in value in Ohio Collieries would have been no less than the landlord's burden in Curtis. However, there is no indication that the Ohio Supreme Court was concerned with that fact. *Page 14 
 {¶ 40} Curtis also incorrectly relies on a distinction between diminution in value and a "test of reasonableness." As we noted inReeser, a difference in value before and after an injury is "the touchstone of the reasonableness determination." 78 Ohio App.3d 681,689. In other words, diminution is part of the "reasonableness test" — not a separate test.
 {¶ 41} Furthermore, Curtis erroneously imposes a burden on defendants to introduce evidence of the market value of a property. This is contrary to the established rule that the party seeking damages has the burden of proof on the issue. See, e.g., Cleveland Builders Supply Co.v. Farmers Ins. Group of Cos. (1995), 102 Ohio App.3d 708, 714,657 N.E.2d 851 (noting that whether an action sounds in contract or tort, plaintiffs who seek recovery of compensatory damages have the burden of proving an injury and resulting damage). We also note that if the burden of proving diminution in market value is objectionable because plaintiffs would have to hire a costly expert, the same objection would apply to defendants as well. A tenant would also not be in the position, like a property owner, to offer evidence about the fair market value of the property without expert assistance.
 {¶ 42} Finally, Curtis's alternate proposal is unworkable. As we noted, Curtis suggested that defendants could move the court to require the plaintiff to produce market value evidence. However, this simply imposes an additional procedural burden on defendants and on courts.
 {¶ 43} The trial court in the present case observed that there is a difference of opinion on this subject among the Second District and other Ohio appellate courts. It is true that the Eleventh District has taken a different approach. However, other appellate *Page 15 
districts continue to apply the rule followed by the Second District for determining the restoration costs of real property. See Martin v. LakeMohawk Property Owners Assn., Inc., Carroll App. No. 06-CA-841,2007-Ohio-6432, at ¶ 27-29 and 66 (Seventh District); Martin v. DesignConstr. Servs., Inc., Summit App. No. 23422, 2007-Ohio-4805, (Ninth District); and Fantozzi v. Henderson, Cuyahoga App. No. 87270,2006-Ohio-5590, at ¶ 16 (Eighth District).
 {¶ 44} In Krofta v. Stallard, Cuyahoga App. No. 85369, 2005-Ohio-3720, the Eighth District Court of Appeals stressed that "[u]sually, evidence regarding the diminution in value is needed to determine the reasonableness of the restoration costs." Id. at ¶ 26, citing Shell OilCo. v. Huttenbauer Land Co. (1977), 118 Ohio App.3d 714, 721 n. 7,693 N.E.2d 1168. However, the Eighth District concluded that:
 {¶ 45} "Failure to present such evidence, however, is not necessarily fatal to a claim in tort for damages to real property. * * * Where, as here, the owner intends to use his residential property according to his own personal preference, restoration costs are an appropriate measure of damages, regardless of the effect of the diminution in market value." Id.
 {¶ 46} As we mentioned, we noted this exception in Jones. Again, the circumstances meriting application of the exception do not exist in the present case. There is no indication that Maier was holding the property for his own personal use. Accordingly, the trial court did not abuse its discretion in adopting the magistrate's decision and in dismissing the case under Civ. R. 41(B)(2).
 {¶ 47} Maier's First Assignment of Error is overruled.
 III *Page 16 {¶ 48} Maier's Second Assignment of Error is as follows:
 {¶ 49} "THE TRIER OF FACT ERRED IN GRANTING THE MOTION TO DISMISS AS TO A CO-DEFENDANT-APPELLEE WHERE NO DEFENSE WAS RAISED AND NO JOINT DEFENSE AGREEMENT WAS FILED."
 {¶ 50} Under this assignment of error, Maier contends that the trial court erred in granting the motion to dismiss as to James because James did not raise the defense in his answer and did not jointly move for dismissal at the magistrate's hearing. The magistrate's decision indicates that James and Angie jointly moved for a directed verdict at the conclusion of the hearing. Since James failed to file a transcript with the trial court, we must accept the magistrate's statement as correct. Jones v. Davenport, 2001 WL 62513, at * 1. Furthermore, this issue has been waived for any purposes other than plain error, because Maier failed to raise the matter in his objections to the magistrate's decision. Lang v. Lang, Miami App. No. 2003-CA-34, 2004-Ohio-2035, at ¶ 8 (citation omitted).
 {¶ 51} The Ohio Supreme Court has indicated that:
 {¶ 52} "In appeals of civil cases, the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." Goldfuss v.Davidson, 79 Ohio St.3d 116, 1997-Ohio-401, 679 N.E.2d 1099, syllabus.
 {¶ 53} After reviewing the record, we find no plain error. As we noted, the factual findings, which we are required to accept, indicate that James and Angie jointly moved *Page 17 
for dismissal. A request for dismissal under Civ. R. 41(B)(1) is also not a defense that would be raised in the pleadings, as it would be relevant only after a party fails to present appropriate evidence at trial.
 {¶ 54} Maier's Second Assignment of Error is overruled.
 IV {¶ 55} Maier's Third Assignment of Error is as follows:
 {¶ 56} "THE TRIER OF FACT ERRED WHERE A SERIES OF PROCEDURAL RULINGS CREATED AN INEQUITABLE OUTCOME AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 57} Maier contends under this assignment of error that he was prejudiced by procedural rulings in this case. First, the trial court allowed James to file an answer by "letter" before his counsel entered an appearance. The court then permitted Angie to file an answer out of time. And finally, the court converted the Civ. R. 50 motion into a motion to dismiss under Civ. R. 41(B)(2). Maier does not offer any legal citations to support his contention that these rulings were inequitable.
 {¶ 58} The only objection that Maier made to the magistrate's decision concerned the requirement of providing evidence on diminution in value before and after the alleged injury. Since the procedural rulings were not raised in the trial court, we may consider only plain error. Under the standard set forth in Goldfuss, we conclude that the alleged error does not affect the basic fairness or integrity of the judicial process. Although James' s "letter" was not in typical answer form, he generally denied the allegations in the complaint and contended that he was not liable for any damages. Furthermore, Angie's late answer was filed in compliance with Civ. R. 6(B), upon motion *Page 18 
and a showing of excusable neglect. Alldred v. Alldred (Nov. 6, 1998), Montgomery App. No. 17043, 1998 WL 769814, * 2.
 {¶ 59} Maier also did not pursue default judgment prior to the time that Angie filed her answer or at any time thereafter. Failure to seek a default judgment is considered a waiver of arguments about untimeliness of an answer. See, e.g., Stipanovich v. Applin (1991),74 Ohio App.3d 506, 508, 599 N.E.2d 711. And finally, there is nothing unusual about converting a Civ. R. 50 motion for a directed verdict into a Civ. R. 41(B)(2) motion to dismiss. Litigants often fail to realize that motions for directed verdict are not appropriate in situations involving bench trials. See, e.g., Hoskins v. Simones, 173 Ohio App.3d 186, 189,2007-Ohio-877 N.E.2d 1008, and Pacher, 2003-Ohio-5333, at ¶ 27-28.
 {¶ 60} Maier's Third Assignment of Error is overruled.
 V {¶ 61} Maier's Fourth Assignment of Error is as follows:
 {¶ 62} "THE TRIER OF FACT ERRED IN FAILING TO GIVE CONSIDERATION FOR EQUITABLE RELIEF WHERE A LANDLORD'S RESIDENTIAL PROPERTY IS DAMAGED AND WRONGDOERS ARE NOT HELD RESPONSIBLE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 63} Under this assignment of error, Maier contends that the trial court erred in failing to consider equitable relief. In this regard, Maier relies on Zartman, claiming that we opened a path in that case for an equitable remedy and some recovery even though we affirmed the requirement of testimony about diminution in value.
 {¶ 64} Again, the issue of equitable relief has been waived, as Maier did not raise *Page 19 
this matter when he objected to the magistrate's decision. We also conclude that the record does not demonstrate plain error. Maier had a full and fair opportunity to present evidence to the trial court.
 {¶ 65} Furthermore, Zartman did not create an equitable remedy. InZartman, a landlord filed suit against a tenant for unpaid rent, utilities, and alleged damage to the real property. The landlord received a judgment in the amount of $984.61, but there was no indication whether that amount encompassed all three claims or only the claimed damages to the property. On appeal, we sustained the tenant's first assignment of error, based on the landlord's failure to offer evidence about diminution in value. 1999 WL 33595145, *1. However, we also noted that:
 {¶ 66} "At oral argument, counsel for the Defendant conceded that Defendant is liable to Plaintiff on her remaining claims for relief in the amounts alleged, less any set-off for the security deposit that Defendant had given to Plaintiff." Id.
 {¶ 67} Based on this concession, we reversed the judgment of $984.61 against the plaintiff, and remanded the case to the trial court to enter a new judgment on the remaining claims for relief. This was not the creation of an "equitable remedy." It was our reaction to a party's own admissions at oral argument. When admissions are made during oral argument or during the course of appeal, we will resolve the case based on the admissions, depending on the type of admission and the matter involved. See, e.g. Quint v. Lomakoski, 173 Ohio App.3d 146, 153,2007-Ohio-4722, 877 N.E.2d 738, at ¶ 28 (finding assignment of error moot based on appellant's concession at oral argument that temporary order being appealed was no longer in place), and State v. Byrd, Darke App. No. 06-CA-1686, 2007-Ohio-332, at ¶ 3 (reversing and remanding for re-sentencing *Page 20 
based on State's concession of sentencing error).
 {¶ 68} The present case does not involve any type of admission or concession. Unlike the landlord in Zartman, Maier did not claim unpaid rents or utilities. In fact, Maier agreed that James and Angie were current in rent and that no unpaid rent was owed. James and Angie have also not admitted any error or liability on appeal. As a result, there is no reason to remand this matter for further proceedings.
 {¶ 69} Maier's Fourth Assignment of Error is overruled.
 VI {¶ 70} All of Maier's assignments of error having been overruled, the judgment of the trial court is Affirmed.
GRADY and WALTERS, JJ., concur.
(Hon. Sumner E. Walters, retired from the Third District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio).
Copies mailed to:
James R. O'Donnell
Samuel L. Huffman
Jonathan S. Zweizig
Hon. Elizabeth Simms Gutmann
[1] Since James and Angie Shields are apparently divorced and are represented by separate counsel, we will refer to them as James and Angie to avoid confusion. *Page 1