{¶ 39} I concur with the majority's determination of the Booths' cross-appeal. I am unable, however, to concur with the majority's conclusion on Duffy Homes' first assignment of error, and I respectfully dissent from that portion of the majority opinion.
 {¶ 40} While I generally agree with the majority's discussion ofOhio Collieries Co. v. Cocke (1923), 107 Ohio St. 238, and the flexibility with which Ohio courts have applied that case, I do not agree that the trial court erred in refusing to give a damages instruction based on Ohio Collieries in this case. The Supreme Court of Ohio has recognized that "the rule contained in Ohio Collieries Co. is not intended to be applicable to every conceivable injury to real property, as the only permissive measure of damages." Thatcher v. LaneConstr. Co. (1970), 21 Ohio App.2d 41, 48. For *Page 19 
example, in Apel v. Katz, 83 Ohio St.3d 11, 20, 1998-Ohio-420, the Supreme Court of Ohio rejected appellant's argument that the trial court erred by not instructing that damage to real property was limited to the diminution in fair market value of the property, stating, "[w]e find that appellant's view of the measure of damages is unduly restrictive as applied to the facts of this case, and does not recognize that some flexibility is permissible in the ascertainment of damages suffered in the appropriate situation." Also in that case, the Supreme Court found that the counter-claimants' failure to present evidence regarding the fair market value of the property was not fatal to their counterclaim for damages.
 {¶ 41} The scope of the pleadings and evidence presented defines the issues in a case, and a court errs by charging a jury with respect to an issue raised by neither the pleadings nor the evidence. Hood v. NewYork, Chicago St. Louis RR. Co. (1957), 166 Ohio St. 529, paragraph four of the syllabus, abrogated on other grounds by Matkovich v. PennCent. Transp. Co. (1982), 69 Ohio St.2d 210. Duffy Homes' proposed instruction, based on Ohio Collieries, would have required the jury to compare the reasonable costs of necessary repairs to the "difference in the fair market value of the property immediately before and after the damage." While I agree that the Ohio Collieries rule would generally apply to cases like this, neither the Booths nor Duffy Homes presented any evidence of the market value of the Booths' home, with or without adequate drainage, as required to apply Duffy Homes' proposed instruction. In Lucas v. Costantini (1983), 13 Ohio App.3d 367, a case for breach of a construction contract, the Twelfth District Court of Appeals found that the trial court erred by putting before the jury the issue of diminution in value of real estate where there was neither a claim for nor evidence related to the diminution in value. It is well established that a trial court will not *Page 20 
instruct the jury where there is no evidence to support an issue.Murphy v. Carrollton Mfg. Co. (1991), 61 Ohio St.3d 585, 591. It is within the trial court's discretion to determine whether the evidence presented is sufficient to warrant a particular instruction. Ballard v.Wal-Mart Stores, Inc. (Jan. 11, 1999), Warren App. No. CA98-05-014. Accordingly, given the absence of evidence of the market value of the Booths' home or any diminution in value as a result of inadequate drainage, I would find no error in the trial court's refusal to give Duffy Homes' proposed instruction based on Ohio Collieries.
 {¶ 42} The trial court's jury instruction regarding the measure of damages for breach of warranty, taken nearly verbatim from Ohio Jury Instructions, was, in general, a correct statement of the law regarding damages for breach of contract. "A standard general jury charge which sets forth, in substance, the relevant law adequately informs the jury of the proper legal standards, absent evidence requiring a more specific instruction." Ballard, supra, citing Jenkins v. Clark (1982),7 Ohio App.3d 93, 100-101. Even where the trial court's instruction is not a full and comprehensive statement of the law, its use is not reversible error as long as it correctly states law pertinent to the issues in the case. Henderson v. Spring Run Allotment (1994), 99 Ohio App.3d 633, 638. Misstatements in a portion of the instruction will not constitute reversible error unless the instructions are so misleading that they prejudicially affect a substantial right of the complaining party. Here, I do not find that the trial court's instructions, which set forth a correct, general statement of the law applicable to a breach of contract claim, misled the jury. Accordingly, I would overrule Duffy Homes' first assignment of error and proceed to address Duffy Homes' second assignment of error. *Page 21 
 {¶ 43} In its second assignment of error, Duffy Homes argues that the record is devoid of competent, credible evidence of essential elements required to support the $300,000 damages award and that the trial court's judgment is, therefore, against the manifest weight of the evidence. When considering whether a civil judgment is against the manifest weight of the evidence, an appellate court is guided by a presumption that the findings of the trier of fact were correct.Seasons Coal Co., Inc. v. Cleveland (1984), 10 Ohio St.3d 77, 79-80. Civil judgments "supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence."C.E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, syllabus. A reviewing court may reverse a judgment on the ground that the judgment is against the manifest weight of the evidence only if "`the verdict is so manifestly contrary to the natural and reasonable inferences to be drawn from the evidence as to produce a result in complete violation of substantial justice.'" Royer v. Bd. of Edn.
(1977), 51 Ohio App.2d 17, 20, quoting Jacobs v. Benedict (1973),39 Ohio App.2d 141, 144. Duffy Homes contends that the record lacks competent, credible evidence of the existence and amount of future damages, the reasonableness and necessity for the installation of an underground barrier, and the reasonableness of the estimated cost of repair.
 {¶ 44} First, I would reject Duffy Homes' contention that the Booths were required to prove the existence and amount of future damages but failed to do so. Although a plaintiff must prove the existence and amount of future damages with a reasonable degree of certainty, seeFouty v. Ohio Dept. of Youth Serv., 167 Ohio App.3d 508, 2006-Ohio-2957, at ¶ 34, the Booths did not argue for an award of future damages, and the trial court did not instruct the jury regarding future damages. Rather, the Booths *Page 22 
argued for damages to remedy the present inadequate lot damage to prevent future damage to the home's foundation and footers. Duffy Homes does not appeal the jury's finding that it breached its warranty. The Booths are, therefore, entitled to recover damages, and the record contained competent, credible evidence that the underground barrier proposed by Satyapriya is a means of placing the Booths in the position they would be in had Duffy Homes not breached its warranty.
 {¶ 45} I would also find that lack of specific testimony that repairs are necessary and reasonable and that the costs for such repairs are reasonable is not fatal to the Booths' recovery of damages. SeeReynolds v. Bauer, Montgomery App. No. 21179, 2006-Ohio-2912; Curtis v.Vazquez, Ashtabula App. No. 2003-A-0027, 2003-Ohio-6224; Holstein v.Delguidice (Dec. 11, 1986), Cuyahoga App. No. 51306 (affirming a judgment for repair costs despite the dissent's statement that the plaintiffs presented no evidence that the repairs were necessary or that the cost of the repairs was reasonable).
 {¶ 46} Here, Satyapriya testified that one repair alternative for inadequate drainage on the Booths' property was an underground barrier of sheet piles driven into the ground, forming a barrier between the source of the water and the home. Satyapriya, who has been involved in designing such barriers and who, as a regular part of his work as an engineer, has estimated the costs of such solutions, testified as follows:
 Q. * * * [B]efore you give a number, would you talk about what area would need to be covered in this case and how many pilings and that sort of thing?
 A. If you want to surround the entire house, we estimated about 17 by 50, meaning a total of 150 — excuse me[,] 240 feet of total length around the perimeter of the entire house. Q. And what would be the estimated cost of doing that? A. Approximately 300,000. *Page 23 
 Q. And is that information derived from sources that you regularly use in your business? A. Yes.
(Tr. 180-181.) Gary Wilhelm, a structural engineer, also testified that the underground barrier would be a remedy that could divert enough water away from the home's foundation to alleviate any problem from water impacting the foundation over a period of time.
 {¶ 47} The other options that Satyapriya recommended in his subsurface investigation report were use of a gravity drain system and elevation of the basement floor if needed to facilitate operation of a gravity drain system. While there was much dispute in the testimony, the jury could have concluded that a gravity drain system, although sufficient to keep the basement from flooding, did not alleviate the inadequate lot drainage because it was insufficient to protect the integrity of the home's foundation from damage. Moreover, there was no testimony at trial about the feasibility of raising the finished basement floor or about the effect it would have on the operation of a gravity drainage system. The only other option presented to the jury was the underground barrier about which Satyapriya testified. As the Second District noted inReynolds, jurors may be presumed to understand what defects make a property uninhabitable or otherwise diminish the owner's enjoyment and use. That court also found that jurors are not so unable to draw proper inferences from the facts that expert testimony is required before the jury may find that repairs are necessary and repair costs are reasonable. Here, a jury might reasonably infer from the testimony presented at trial that the underground barrier is necessary to place the Booths in the position they would have been in had Duffy Homes not breached its warranty. *Page 24 
 {¶ 48} Duffy Homes had the opportunity to dispute both the reasonableness and necessity of Satyapriya's proposed solutions and the reasonableness of the costs of such solutions through cross-examination and the submission of rebuttal evidence. Duffy Homes' cross-examination of Satyapriya, however, did not address Satyapriya's testimony regarding the underground barrier, but focused exclusively on the adequacy of the existing gravity drain system. Furthermore, Duffy Homes did not object to Satyapriya's testimony regarding the underground barrier or its cost and did not argue that the cost of such a solution was unreasonable. From Satyapriya's testimony, the jury could have inferred that the costs of the underground barrier were reasonable. Accordingly, I do not find that the jury's verdict is so manifestly contrary to the natural and reasonable inferences to be drawn from the evidence as to produce a result in complete violation of substantial justice. I would, therefore, conclude that the trial court's judgment is not against the manifest weight of the evidence and would overrule Duffy Homes' second assignment of error. *Page 1