OPINION
{¶ 1} Appellant, Lino Battaglini, appeals the Mahoning County Court of Common Pleas' jury verdict in favor of Appellee, Aey Electric. The parties' dispute concerns payment for electrical services. Appellant asserts two assignments of error on appeal. For the following reasons, they are overruled and we affirm the judgment of the trial court.
 {¶ 2} Appellee filed its complaint in the Struthers Municipal Court seeking payment for electrical services performed at Appellant's property located in Lowellville, Ohio. Appellant filed his answer and counterclaim. Thereafter, the case was transferred to the Mahoning County Court of Common Pleas since Appellant's counterclaim exceeded the Municipal Court's jurisdictional monetary limits.
 {¶ 3} According to the dockets of both Struthers Municipal Court and the Mahoning County Court of Common Pleas, Aey never filed an answer or responsive pleading to Appellant's counterclaim. However, Appellant never requested default judgment as to his counterclaim prior to trial.
 {¶ 4} The case proceeded to jury trial on March 3, 2003.
 {¶ 5} The underlying facts of the dispute are as follows: Aey was contacted to perform electrical work on the residence, which already had the electrical wiring "roughed in" by an unlicensed electrician. The parties entered into an oral agreement, which provided that Aey would perform electrical services at the rate of $38.00 per hour.
 {¶ 6} The extent of the work was apparently not clear because Aey was required not only to complete someone else's work but also to rework portions of the job. Appellant was providing most of the materials and performing some of the cleanup. (Trial Tr. pp. 104-109.) The underlying dispute arose initially from Appellant's claims that the parties had agreed to a cap on the total cost of the electrical work. Aey denied that the parties agreed to a ceiling.
 {¶ 7} At the close of Aey's evidence at trial, Appellant requested a directed verdict on his counterclaim since Aey failed to file an answer or responsive pleading. The trial judge overruled this request.
 {¶ 8} Thereafter, the jury rendered a verdict for Aey on March 5, 2003. The trial court's judgment entry setting forth the jury's verdict was filed on March 14, 2003, and Appellant timely appealed.
 {¶ 9} On appeal, Aey has not filed a responsive brief. Therefore, pursuant to App.R. 18(C), this Court may accept Appellant's statement of the facts and issues as correct and reverse the trial court's judgment if his brief reasonably appears to sustain such action.
 {¶ 10} Appellant raises two errors on appeal.
 {¶ 11} Appellant's first assigned error asserts:
 {¶ 12} "The trial court's failure to grant appellant's motion for directed verdict on his counterclaim is contrary to ohio Civil Rule 8(d) and constitutes reversible error."
 {¶ 13} In reviewing a trial court's denial of a motion for a directed verdict, the court of appeals is presented with a question of law, i.e., whether, "reasonable minds could come to but one conclusion upon the evidence submitted," on any determinative issues. Ruta v. Breckenridge-Remy Co. (1982),69 Ohio St.2d 66, 67-68, 430 N.E.2d 935, 23 O.O.3d 115; Civ.R. 50(A)(4). A motion for a directed verdict, "examines the materiality of the evidence, as opposed to the conclusions to be drawn from the evidence." Ruta at 69. This Court's review is de novo. Cleveland Elec. Illum. Co. v. Pub. Util. Comm. (1996),76 Ohio St.3d 521, 523, 668 N.E.2d 889, 891.
 {¶ 14} According to Civ.R. 50(A)(4), a motion for directed verdict should be granted if, after construing the evidence most strongly in favor of the party against whom the motion is directed, "reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party[.]" The "reasonable minds" analysis requires the court to determine whether any substantive and probative evidence exists that favors the nonmoving party's position. Civ.R. 50(A)(4);Ruta, supra, (1982), 69 Ohio St.2d 66, 69, 23 O.O.3d 115,430 N.E.2d 935.
 {¶ 15} Appellant's initial argument is essentially that the trial court should have granted his request for a directed verdict since Aey failed to answer or otherwise respond to his counterclaim. Civ.R. 8(D), effect of failure to deny, provides:
 {¶ 16} "Averments in a pleading to which a responsive pleading is required, other than those as to the amount of damage, are admitted when not denied in the responsive pleading. Averments in a pleading to which no responsive pleading is required or permitted shall be taken as denied or avoided."
 {¶ 17} Since Aey never answered the counterclaim, Appellant asserts that his allegations should have been deemed admitted, and as a result, the trial court was forced to grant a directed verdict on his counterclaim.
 {¶ 18} Appellant's counterclaim sets forth two claims for relief: that Aey's work was defective and damaged Appellant's cabinets; and that Aey's refusal to call for the final electrical inspection caused damage to Appellant. (May 29, 2001, Answer and Counterclaim.)
 {¶ 19} At trial, Appellant asked for a directed verdict as to his counterclaim after Aey presented its case in chief. However, the counterclaim issues were addressed at trial prior to Appellant's request for a directed verdict. Aey presented two witnesses in support of its case in chief who also addressed the issues contained in the counterclaim; David Pasky ("Pasky"), an Aey employee, and Robert Aey ("Robert"), part owner.
 {¶ 20} Pasky testified that Appellant never complained about the quality of their work. (Trial Tr. p. 95.) Pasky also testified that this electrical work was not simply a new home installation, but that many of the tasks required more than one person. (Trial Tr. p. 100.) Further, this home already had the insulation installed making Aey's later electrical work a "nightmare." (Trial Tr. p. 100.)
 {¶ 21} Robert testified that Appellant never requested any revisions to the Aey work, but Appellant had advised Robert that he was dissatisfied with some holes in the cabinetry. However, Robert testified that these holes inside the cabinets were necessary since Aey had to install the cabinet lighting after the cabinets were installed in the home. (Trial Tr. pp. 133, 156.) Appellant never advised Robert that he was unhappy with the work until after the fee dispute occurred. (Trial Tr. pp. 122, 132-133.)
 {¶ 22} Once the dispute as to the billing arose, Appellant advised Robert that Aey was not being paid because the work being billed should not have taken that many hours to complete. (Trial Tr. pp. 178, 180.)
 {¶ 23} Robert also testified that his company never called for the final electrical inspection because the home was not completed. (Trial Tr. p. 120.) Robert testified that he did not remember whether Appellant requested a final electrical inspection. (Trial Tr. p. 181.)
 {¶ 24} After Aey presented its evidence and rested as to the case in chief, Appellant's trial counsel requested a directed verdict on the counterclaim based on Aey's failure to file an answer. (Tr. Tr. pp. 184-185.)
 {¶ 25} Aey's counsel argued that an answer to Appellant's counterclaim was filed in Struthers' Municipal Court, but it was inadvertently not transferred with the record to the common pleas court. (Trial Tr. pp. 184-185.) In addition, counsel asserted that this issue was untimely and, because Appellant failed to address it prior to the commencement of trial, the matter was waived. (Trial Tr. pp. 186-189.)
 {¶ 26} The trial judge overruled Appellant's motion for a directed verdict following this exchange without stating his reasoning. (Trial Tr. p. 190.)
 {¶ 27} Notwithstanding Appellant's request for directed verdict, Appellant should have requested a default judgment in advance of trial. Civ.R. 55(A) provides:
 {¶ 28} "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules, the party entitled to a judgment by default shall apply in writing or orally to the court therefore; * * *."
 {¶ 29} Appellant never requested, either in writing or orally, a default judgment on his counterclaim. Thus, the trial court never held a hearing on the issue or considered entering a default judgment as to the counterclaim.
 {¶ 30} The Eighth District Court of Appeals has held that failure to pursue a default judgment motion in the trial court when an answer is untimely filed constitutes a waiver.Stipanovich v. Applin (1991), 74 Ohio App.3d 506,599 N.E.2d 711.
 {¶ 31} Appellant asserts on appeal that Aey failed to defend the counterclaim's allegations at trial, thus rendering a directed verdict appropriate. However, as discussed previously, Aey presented testimony relevant to these issues before Appellant requested his directed verdict. Further, Appellant had not presented any evidence in support of his counterclaim at that point in the trial. The request for directed verdict was based solely on Appellant's claim that the allegations contained in his counterclaim should be deemed admitted pursuant to Civ.R. 8(D). However, the matter was not timely raised to the trial court, and Aey presented testimony to the contrary.
 {¶ 32} In construing the evidence most strongly in Aey's favor, reasonable minds could come to more than one conclusion as to the allegations raised by the counterclaim based on Pasky's and Robert's testimony contrary to these assertions. Civ.R. 50(A)(4). Based on the foregoing, Appellant's first assigned error lacks merit and his request for a directed verdict on the counterclaim was properly overruled.
 {¶ 33} Appellant's second assigned error asserts:
 {¶ 34} "The trial court's failure to give a jury instruction on appellant's counterclaim is contrary to ohio law and constitutes reversible error."
 {¶ 35} Appellant argues that the trial court committed reversible error in failing to give a jury instruction relevant to the allegations made in his counterclaim, and as such, he is entitled to either a new trial or a directed verdict. As earlier stated, Appellant filed a counterclaim raising two claims for relief. The counterclaim alleges that Aey's defective work damaged Appellant's cabinets and that Aey refused to call for the final electrical inspection resulting in damages. Both of these allegations are based on breach of contract claims stemming from the parties' oral agreement.
 {¶ 36} Jury instructions should be confined to the issues raised by the pleadings and the evidence. Becker, supra, at 208, 560 N.E.2d 165. An instruction is properly given if it is a correct statement of law that is applicable to the facts and if reasonable minds might reach the conclusion sought by that instruction. Murphy v. Carrollton Manufacturing Co. (1991),61 Ohio St.3d 585, 591, 575 N.E.2d 828.
 {¶ 37} In examining alleged errors in a jury instruction, an appellate court must consider the jury charge in its entirety and, "must determine whether the jury charge probably misled the jury in a matter materially affecting the complaining party's substantial rights." Becker v. Lake Cty. Mem. Hosp. West
(1990), 53 Ohio St.3d 202, 208, 560 N.E.2d 165.
 {¶ 38} Civ.R. 51(A) provides in part:
 {¶ 39} "At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. Copies shall be furnished to all other parties at the time of making the requests. The court shall inform counsel of its proposed action on the requests prior to counsel's arguments to the jury and shall give the jury complete instructions after the arguments are completed. The court also may give some or all of its instructions to the jury prior to counsel's arguments. The court need not reduce its instructions to writing."
 {¶ 40} It is unclear from the record in the instant cause what jury instructions either counsel submitted, if any, since neither party filed jury instructions with the clerk of courts, nor is there an initial jury instruction discussion on the record. The failure to timely advise the trial court of a potential error by raising an objection waives that issue for appellate purposes. Goldfuss v. Davidson (1997),79 Ohio St.3d 116, 679 N.E.2d 1099. This includes failing to object to a trial court's erroneous jury instructions. Leber v. Smith (1994),70 Ohio St.3d 548, 639, N.E.2d 1159.
 {¶ 41} In the instant matter, Appellant's counsel may have raised an objection to the lack of jury instruction during an off-the-record discussion before the jury began deliberating; however, any objection was not actually recorded until after the jury was taken out of the courtroom. (Trial Tr. p. 379.)
 {¶ 42} While Appellant did not timely object, such an error may be raised for the first time on appeal under the plain error doctrine. Jenks v. City of West Carrollton (1989),58 Ohio App.3d 33,567 N.E.2d 1338, syllabus; Goldfuss,79 Ohio St.3d at 121,679 N.E.2d 1099. "In applying the doctrine of plain error in a civil case, reviewing courts must proceed with the utmost caution, limiting the doctrine strictly to those extremely rare cases where exceptional circumstances require its application to prevent a manifest miscarriage of justice, and where the error complained of, if left uncorrected, would have a material adverse effect on the character of, and public confidence in, judicial proceedings." Id.
 {¶ 43} In Appellant's opening statement he did not specifically advise the jury of the existence of a counterclaim. However, in his opening statement counsel did claim that Appellant suffered damages, because Appellant was unable to sell the home as he intended. (Trial Tr. pp. 60-61.)
 {¶ 44} After Aey presented its claim for relief, Appellant's counsel called two witnesses on direct examination. Both testified in support of the claims made by Appellant.
 {¶ 45} Remon Hayek ("Hayek"), a general contractor and developer, testified on Appellant's behalf. Hayek testified that this home's electrical work from start to finish should have cost approximately $9,800.00 total. (Trial Tr. p. 199.) Hayek also testified that Aey's work should have cost $4,500.00 since the "rough-in" electrical work had already been approved. (Trial Tr. pp. 226-227.)
 {¶ 46} However, an unlicensed electrician apparently performed the "rough-in" electrical work, and Aey contended that the work was so poorly performed that it was a "nightmare." Hayek never inspected the electrical work during its "rough-in" stage.
 {¶ 47} As to Appellant's alleged damages, Hayek testified that cabinets needed replaced and that certain electrical work needed completed or replaced once Aey finished. (Trial Tr. pp. 233-234.) Hayek testified that Aey charged too many hours for this home's electrical work. (Trial Tr. pp. 239-240.) Hayek never testified as to a dollar amount necessary to correct and complete Aey's alleged defective work to any amount in his opinion that would constitute adequate compensation.
 {¶ 48} Hayek also testified that the house would not currently pass the final electrical inspection, and this lack or inspection prevented Appellant from selling the house. (Trial Tr. pp. 228, 232, 290.) Notwithstanding this testimony, on cross-examination Hayek was presented with an electrical inspection report that reflected that the residence had indeed passed the final electrical inspection on August 28, 1998, despite the lack of a final sticker on the electrical boxes. (Trial Tr. pp. 282-283.) This apparently came as a surprise to Hayek, Appellant, and Appellant's counsel.
 {¶ 49} Appellant testified that he was never advised that the house had passed final inspection. He stated that he asked Aey to arrange for the final inspection three to four times, which he believed was not done. (Trial Tr. p. 290.)
 {¶ 50} Appellant also testified that Aey damaged his kitchen cabinets, which originally cost $7,937.17 not including installation. (Trial Tr. p. 302.) Appellant stated that he had intended to sell the house, since he already had a house and this one was not in his price range. (Trial Tr. pp. 307-312.) Appellant also identified photographs depicting the alleged damage. (Trial Tr. pp. 318-323.)
 {¶ 51} Appellant's trial counsel specifically addressed Appellant's counterclaim and damages in his closing remarks, and he asked the jury for judgment in the amount of $64,409.00. (Trial Tr. pp. 351-356.)
 {¶ 52} Appellant is correct in his assertion that the trial court provided no specific jury instruction relative to his counterclaim. The judge did generally state:
 {¶ 53} "The person who claims that certain facts exist must prove them by a preponderance of the evidence. This obligation is known as the burden of proof."
 {¶ 54} (Trial Tr. p. 364.)
 {¶ 55} However, the judge immediately thereafter instructed the jury as to Aey's burden of proof on its breach of contract claim. He never instructed the jury as to Appellant's burden or whether Appellant also had a breach of contract claim. The judge advised the jury relative to damages:
 {¶ 56} "* * * If you find by the greater weight of the evidence that the defendant breached the contract, the plaintiff is entitled to damages in the amount sufficient to place him in the same position in which he would have been if the contract had been fully performed by the defendant to the extent that the damages are reasonable — reasonably certain and reasonably foreseeable." (Trial Tr. p. 371.)
 {¶ 57} The judge did not provide a corresponding jury instruction as to Appellant's potential breach of contract claims.
 {¶ 58} The trial judge also read the verdict forms into the record. These forms were essentially the same; one reaching a verdict in favor of Appellee, one in favor of Appellant. Both were read aloud to the jury. The second form provided:
 {¶ 59} "* * * we, the jury, do hereby find for the defendant, * * *, and we find that the total amount of damages for him is — and, once again, there's a dollar sign and a [sic] room underneath for up to eight signatures of the jurors." (Trial Tr. pp. 376-377.)
 {¶ 60} After the trial court concluded giving its instructions to the jury, Appellant's counsel objected to the lack of instruction relative to his counterclaim:
 {¶ 61} "There's nothing in the instructions about returning a verdict on the counterclaim, and there is a form for the verdict, but unless they're told they can return a verdict on the counterclaim, they may not even consider it." (Trial Tr. p. 380.)
 {¶ 62} Aey's counsel argued that Appellant's trial counsel waived this argument, since he had ample opportunity to review the jury instructions, but instead of objecting, had agreed that they were "appropriate and sufficient and complete." (Trial Tr. p. 380.) This alleged agreement as to the jury instructions is not on the record. There is no previous objection in the record. We note the trial judge never ruled on Appellant's post-jury instruction objection for the record. There was a subsequent off-the-record discussion with counsel but no subsequent additional instructions were given. Thus, we must interpret the actions of the trial court as overruling Appellant's late objection. (Trial Tr. p. 381.)
 {¶ 63} The jury returned its unanimous verdict in favor of Aey for $3,415.10.
 {¶ 64} Based on the record before us, Appellant did not object to the lack of jury instruction until after the instructions were given. Because any objection was untimely, this issue is waived on appeal absent plain error. Goldfuss, supra. Appellant clearly presented some evidence in support of his counterclaim, but this evidence was almost wholly rebutted. However, the trial court provided a jury form identifying that judgment in Appellant's favor was an option the jury could consider. Based on this record and after reviewing the trial court's jury instructions in their entirety, this Court cannot conclude that the lack of instruction, "misled the jury in a matter materially affecting," Appellant's substantial rights. It appears that the jury simply found no merit to Appellant's claims. Based on the foregoing, the record in the instant cause does not demonstrate plain error. Thus, this assigned error lacks merit and is overruled.
 {¶ 65} Based on all of the foregoing, the trial court's judgment is hereby affirmed in its entirety.
Donofrio, J., concurs.
Vukovich, J., concurs.