[Cite as *Nguyen v. Chen*, 2014-Ohio-5188.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY


| | | |
|---|---|---|
| PHOUNG T. NGUYEN, et al., | : | |
| | | CASE NO. CA2013-10-191 |
| Plaintiffs-Appellees, | : | |
| | | O P I N I O N |
| | : | 11/24/2014 |
| - vs - | | |
| | : | |
| GONG CHEN, et al., | : | |
| | | |
| Defendants-Appellants. | : | |


CIVIL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CV 2010 04 1526


Dennis L. Adams, 10 Journal Square, Suite 400, Hamilton, Ohio 45012, for plaintiffs-appellees

Scott N. Blauvelt, 246 High Street, Hamilton, Ohio 45011, for defendants-appellants


**M. POWELL, J.**

{¶ 1} Defendants-appellants, Gong Chen and Nhung Thi Dinh, appeal a decision from the Butler County Court of Common Pleas granting judgment in favor of plaintiffs-appellees, Phuong T. Nguyen and Uyen T. Luong, on their fraud and wrongful eviction claims, and awarding damages and prejudgment interest to appellees.

**I. Facts**

{¶ 2} This case arises out of the purported sale of a nail salon business, United Nails, located in West Chester, Ohio. Appellants, Chen and Dinh, are married and currently operate United Nails. Appellees, Nguyen and Luong, are also married. Luong met appellants when she began working at United Nails in the late spring of 2008. The dispute between the parties arises out of events occurring in June 2008 through January 2009. Essentially, appellees claim there was a sale of the business, whereas appellants assert there was only a loan agreement between the parties. On April 5, 2010, appellees filed a complaint against appellants asserting six claims related to the purported sale of the business, including claims for: (1) breach of contract; (2) breach of agreement; (3) wrongful eviction; (4) conversion; (5) fraud; and (6) loss of business. Appellants answered the complaint and also alleged four counterclaims: (1) loss of income; (2) breach of contract; (3) conversion; and (4) tortious interference with business relations. Appellees never filed an answer to the counterclaims. The case proceeded to a bench trial on March 5, 2013. At trial, both sides provided drastically different accounts of the parties' business arrangement.

## A. Appellees' Version of Events

{¶ 3} At trial, Luong testified that she had been working at United Nails for a few months when appellants approached her about purchasing the salon. Luong spoke to her husband, Nguyen, about the offer. Nguyen testified that the four then began discussing a potential sale. According to Nguyen, the parties ultimately agreed on a $65,000 purchase price. Nguyen explained that he was unable to come up with the full $65,000 purchase price. Consequently, appellants agreed to accept a $15,000 down payment in cash, and the remaining funds would be paid at a later date. Based on the parties' agreement, Nguyen testified all four went to a Fifth Third Bank location to execute a document to reflect the $50,000 balance Nguyen and Luong owed appellants. Nguyen stated that a promissory note was drawn up on June 16, 2008, by a Fifth Third Bank employee as dictated by Chen. The

- 2 -

document was entered into evidence and states: "We, Gong G. Chen and Nhung Dinh, have agreed to lend Phuong Nguyen and To Uyen Luong $50,000 on June 16, 2008. We have asked that Phuong Nguyen and To Uyen Luong repay the entire loan in full prior to April 16, 2009." All four parties signed this document and the signatures were notarized. There was also some testimony regarding a second promissory note. This note was executed on September 4, 2008, and was notarized and signed only by Nguyen and Dinh. It states: "I, Nhung Dinh agree to lend Phuong Nguyen and [sic] $35,000 on September 4, 2008. I have asked that Phuong Nguyen to [sic] repay the entire loan in full, prior to April 16, 2009." Nguyen testified this second note was not a new note, but rather a replacement note indicating that he only owed appellants $35,000 instead of $50,000 because he had already paid $15,000 towards the $50,000 loan.

{¶ 4} According to Nguyen, there was no loan as appellants never actually gave appellees any money. After the June 16, 2008 note was executed, the parties went back to the nail salon where Nguyen requested that the parties execute a sale and lease agreement transferring the business to appellees. Nguyen testified that Chen indicated they would execute those documents the following day. According to Nguyen, he agreed to this arrangement because "they told me, you know, they let us owe them – they let us owe—owe them $50,000, they don't worry why we worry, * * * we believed in them." However, the following day, when Nguyen again asked about the sale and lease agreement, Chen informed Nguyen that he was leaving the country in a few days, and his wife, Dinh, would take of care of it since Dinh was the owner of the shop. Nguyen further testified that Chen stated Dinh was the owner of the shop as she held the state license. Nguyen again agreed to wait.

{¶ 5} On June 24, 2008, in accordance with his earlier discussion with Chen, Nguyen testified he and Dinh went back to Fifth Third Bank to have the "sale agreement" executed.

This document states: "I, Nhung Thi Dinh, have sold my salon business United Nails * * * to Phuong T. Nguyen and To Uyen T. Luong for the price of $15,000." This document is notarized and is signed by Dinh, Nguyen, and Luong. According to Nguyen, Dinh dictated the document to the Fifth Third employee. Nguyen explained that this document provided for a $15,000 purchase price rather than the agreed $65,000 because appellants did not "want to pay too much tax." Nguyen also testified that he and Luong made additional payments to appellants. Specifically, Nguyen testified the following payments were made: (1) $5,000 by check on July 31, 2008; (2) $7,900 by two checks on September 3, 2008; (3) $3,000 in cash sometime in September or October 2008; and (4) $2,100 appellants received in credit card revenue from the first few days appellees owned the salon.[1] Appellees introduced as exhibits the three canceled checks to support these payments. According to Nguyen, the payments to appellants, including the $15,000 down payment, totaled $33,000.

{¶ 6} Nguyen further testified that on June 17, 2008, he began running United Nails as its new owner. As the new owner, Nguyen testified he conducted activities such as opening up a business checking account, setting up a new credit card machine and account, filing incorporation documents with the Ohio Secretary of State for a limited liability company entitled, "Phuong Nguyen, LLC," applying for and receiving an Employer Identification Number from the IRS for "Phuong Nguyen, LLC, United Nail," hiring employees and issuing W-2's, paying utilities, and paying rent.

{¶ 7} In August 2008, a representative of R.L. Deville Enterprises Cincinnati, LLC (Deville), the landlord for the building where the nail salon was located, came looking for Chen. Nguyen indicated he was the new owner of the salon. Nguyen was provided with a

---

1. Nguyen testified that although he opened up a credit card account for the salon on June 17, 2008, the day after the purported purchase, the account took several days to process. According to Nguyen, he and Chen agreed that Nguyen would use Chen's prior credit card account during that time and that the funds received during that time would be applied to the balance of the loan.

document which indicated the shop was past due on rent for the months of June, July, and August.  Nguyen expressed confusion as he had submitted payments to Deville for those months' rent.  At trial, Nguyen submitted as exhibits, copies of monthly rent checks for July 2008 through January 2009 paid to and cashed by Deville.  When Nguyen confronted Chen regarding the past due rent, Nguyen testified Chen told him not to contact Deville and he would take care of the matter.  Nguyen attempted to have the lease transferred to him.  Deville indicated a transfer of the lease was not possible until the account was brought current.  Nguyen testified that he told Chen he would not make any additional payments until appellants signed over the lease and took care of the past due rent.[2]

{¶ 8}   According to Nguyen, Nguyen and Luong operated United Nails as its owners until January 2009.  In January 2009, appellants demanded the remaining balance of the $65,000 purchase price despite the parties' understanding that it was not due until April 16, 2009.  On January 6, 2009, appellants presented appellees with a "Notice to Leave Premises."  On January 10, 2009, appellees closed the salon as usual, and appellants came by and changed the locks on the front and back doors.  At trial, appellees submitted an exhibit of the personal property they claim remained in the salon when appellants changed the lock on January 10, 2009.

## B.  Appellants' Version of the Events

{¶ 9}   Appellants contend they never sold the salon to appellees.  Chen testified that he and Dinh agreed to loan appellees $50,000.  According to Chen, they agreed to provide the loan because "they say they work for me as my loyal employees and asked me to trust them; loan them the sum of money so that they can invest in [real estate] – back home in Vietnam."  According to Chen, the agreement was that appellees would manage United Nails

---

2. The record at trial does not indicate if, or how, the dispute with Deville regarding past due rent was ever resolved.

while he was out of the country caring for his father in China. Chen testified he left for China in the afternoon on June 16, 2008, after the loan agreement was executed. Chen further testified that there were never any discussions about selling the business. Rather, Chen agreed he would pay appellees a commission for running his business, where appellees were permitted to use business revenues to pay rent and other expenses of the business on Chen's behalf and the remaining revenue would be divided as a "60 and 40 percent split." Chen also testified that he was not present on June 17, 2008, when an employee of PNC Bank came to the salon and changed the credit card machine to an account belonging to Nguyen. Chen stated that he never gave Nguyen permission to "leave all the money in his account." As to the June 24, 2008 sale agreement signed by Dinh, Chen testified that he never agreed to sell the salon, he was unaware that Dinh had been asked to sign the agreement, and did not learn of it until after it had been signed by the parties. Both Chen and Dinh testified that she did not read or write English. Dinh further testified that she was unaware of the contents of the documents she signed on June 24, 2008 and September 4, 2008. Dinh stated that Nguyen told her the documents were necessary to secure credit for their investment back in Vietnam.

{¶ 10} According to Chen, it was Luong who was primarily hired by appellants. He further stated that once he became aware that Nguyen was involved in running the business, that bills were not being paid, and that utility bills were being transferred out of his name, Chen attempted to contact appellees. However, appellees refused to speak with Chen and would only speak with Dinh. In order to fire appellees and remove them from the business, Chen testified that he handed them the "Notice to Leave the Premises" letter. The letter directed appellees to leave the premises on or before January 10, 2009. When appellees refused to leave on January 10, 2009, that is when appellants changed the locks on the salon.

## C. Trial Court's Decision

{¶ 11} On September 26, 2013, the trial court entered its decision and entry finding in favor of appellees as to their claims for wrongful eviction and fraud. As to damages, the trial court awarded $6,129.73 on the wrongful eviction count and $33,900 on appellees' fraud claim. The trial court also awarded prejudgment interest in the amount of six percent beginning on January 10, 2009. The trial court denied the remaining claims.[3] Appellants timely appealed and raise five assignments of error for our review.

## II. Analysis

## A. Appellees' Claim of Fraud

{¶ 12} Assignment of Error No. 1:

{¶ 13} THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANTS IN RENDERING A VERDICT FINDING APPELLANTS LIABLE FOR COUNT FIVE-FRAUD, AND FOR AWARDING DAMAGES THEREON.

{¶ 14} In their first assignment of error, appellants claim the trial court erred because the theory of fraud upon which appellees recovered was not pleaded in their complaint and because the evidence did not support such an award. We find no merit to these arguments.

## 1. Unplead Claim of Fraud

{¶ 15} Appellants assert that the theory of fraud alleged in the complaint was fraud in the removal of appellees from the nail salon and appellants' representation that they were "rightful owners." Accordingly, appellants argue the trial court was not permitted to find them liable for fraud in the sale of the business as such fraud was never pleaded. Although appellees agree that this particular theory of fraud was an unpleaded issue, appellees contend the trial court did not err because fraud in the sale of the business was tried by the implied consent of the parties.

- 7 -

{¶ **16**} Civ.R 15(B) allows for the amendment of the pleadings to conform to evidence

---

3. At the close of appellees' evidence at trial, appellees withdrew their claim for loss of business.

presented at trial, and therefore, "treats issues that were not raised in the pleadings as if they were so raised, as long as they were tried with the express or implied consent of the parties and substantial prejudice will not arise from the result." *Aztec Internatl. Foods, Inc. v. Duenas*, 12th Dist. Clermont No. CA2012-01-002, 2013-Ohio-450, ¶ 25; *State ex rel. Evans v. Bainbridge Twp. Trustees*, 5 Ohio St.3d 41 (1983), paragraph one of the syllabus. "The rule expresses a liberal policy toward the allowance of amendments * * * [and] was promulgated to provide the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties." *Stafford v. Aces & Eights Harley-Davidson LLC*, 12th Dist. Warren No. CA2005-06-070, 2006-Ohio-1780, ¶ 21, quoting *Hall v. Bunn*, 11 Ohio St.3d 118, 121 (1984).

{¶ 17} "Under Civ.R. 15(B), implied consent is not established merely because evidence bearing directly on an unpleaded issue was introduced without objection; it must appear that the parties understood the evidence was aimed at the unpleaded issue." *Stafford* at ¶ 25, quoting *Evans* at paragraph one and two of the syllabus. In determining whether the parties impliedly consented to litigate an issue, various factors should be considered, including: "whether [the parties] recognized that an unpleaded issue entered the case; whether the opposing party had a fair opportunity to address the tendered issue or would offer additional evidence if the case were to be tried on a different theory; and, whether the witnesses were subjected to extensive cross-examination on the issue." *Textiles, Inc. v. Design Wise, Inc.*, 12th Dist. Madison Nos. CA2009-08-015 and CA2009-08-018, 2010-Ohio-1524, ¶ 18, quoting *Evans* at paragraphs one and two of the syllabus.

{¶ 18} A trial court is permitted to sua sponte consider whether an unpleaded issue was tried by the consent of the parties, as long as the decision to do so complies with Civ.R. 15(B). *Stafford* at ¶ 22 (affirming the trial court's decision to sua sponte apply Civ.R. 15(B) and amend pleadings even though the parties never moved to amend their pleadings); *see*

*also Textiles* at ¶ 17. Whether the parties impliedly consented to try an unpleaded issue is a decision left to the sound discretion of the trial court and, therefore, will not be reversed absent an abuse of discretion. *Textiles* at ¶ 17. An abuse of discretion is more than an error of judgment; it means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. *Motorists Mut. Ins. Co. v. Roberts*, 12th Dist. Warren No. CA2013-09-089, 2014-Ohio-1893, ¶ 12, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 19} After a review of the record, we find there is evidence from which the trial court could rationally conclude that the parties impliedly consented to try the fraud claim premised upon the sale of the business. In their complaint, appellees first set forth the factual allegations related to their breach of contract claim, including the allegation that appellants offered to sell the business to appellees and appellees later made payments to appellants based on this "agreement." Appellees' fraud count was pleaded after the breach of contract claim and specifically incorporated all the preceding allegations. The incorporation of all the prior allegations, specifically, those related to the breach of contract claim, and sale of the business, sufficiently notified appellants that the evidence related to the purported sale of the business served a dual purpose and would be relied upon in the prosecution of both appellees' breach of contract claim and fraud claim. Furthermore, the record demonstrates that appellants never challenged the particularity of appellees' pleaded fraud claim under Civ.R. 9(B), never requested a more definite statement pursuant to Civ.R. 12(E), and never moved to dismiss the fraud count under Civ.R. 12(B)(6). Had appellants wished to challenge the specificity of the fraud claim as pleaded, they certainly could have done so. Accordingly, the record indicates appellants were aware of the claim of fraud in the sale of the business.

{¶ 20} Furthermore, the record demonstrates that appellants were given a fair opportunity to address the issue of fraud as it related to the purported sale of the business and to cross-examine witnesses on the matter at trial. The testimony at trial centered

completely around the two parties' versions of the transaction between them. In particular, Nguyen provided detailed testimony regarding the purported sale of United Nails. Appellants were entitled and did, in fact cross-examine Nguyen regarding his testimony. Moreover, appellants presented their own case and claimed that the transaction was merely a loan. While no one said the magic words "fraud in the sale of the business" in their pre-trial statement, opening statement, or closing argument, it is evident from the record that the parties were aware and tried the issue of appellants' alleged fraud in the sale of the business.

{¶ 21} In this particular circumstance, and under the facts presented in this case, we find that the theory of fraud in the sale of the business was tried by the implied consent of the parties such that the trial court did not abuse its discretion when it amended the pleadings under Civ.R. 15(B) and granted judgment in favor of appellees.

### 2. Manifest Weight of the Evidence

{¶ 22} Appellants also assert within their first assignment of error that the trial court's judgment is against the manifest weight of the evidence. Appellants claim there was insufficient evidence regarding appellees justifiable reliance on any alleged representation made by Chen or Dinh. Specifically, appellants assert "it was wholly unreasonable for [a]ppellees to rely on any claimed representation that this business was being sold and to pay money toward the purchase."

{¶ 23} When evaluating whether a judgment is against the manifest weight of the evidence in a civil case, the standard of review is the same as in the criminal context. *Duenas*, 2013-Ohio-450 at ¶ 35, citing *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 17. "[W]e weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the finder of fact 'clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.'" *Marinich v. Lumpkin*, 12th Dist. Warren No.

CA2011-11-124, 2012-Ohio-4526, ¶ 20, quoting *Eastley* at ¶ 20. In weighing the evidence, we are mindful of the presumption in favor of the finder of fact. *Eastley* at ¶ 21. If the evidence presented to the trial court is susceptible to more than one interpretation, we are bound to give it the construction that is consistent with the trial court's judgment and finding of facts. *Jones v. Homes*, 12th Dist. Butler No. CA2012-07-133, 2013-Ohio-448, ¶ 24. "A reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court." *Duenas* at ¶ 35, quoting *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 81 (1984).

{¶ 24} In order to establish a claim for fraud, appellees were required to demonstrate the following elements:

> (a) a representation or, where there is a duty to disclose, a concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance.

*Duenas* at ¶ 36, quoting *Groob v. KeyBank*, 108 Ohio St.3d 348, 2006-Ohio-1189, ¶ 47.

{¶ 25} Appellants have specifically challenged the trial court's finding of justifiable reliance on the part of appellees. "The question of justifiable reliance is one of fact and requires an inquiry into the relationship between the parties." *Crown Property Dev., Inc. v. Omega Oil Co.*, 113 Ohio App.3d 647, 657 (12th Dist.1996). "The factors a court should consider include the nature of the transaction, the materiality of the representation or fact concealed, the parties' relationship, and their respective intelligence, experience, age, mental and physical condition, knowledge, and means of knowledge." *Duenas* at ¶ 47. Reliance is justified if the representation does not appear unreasonable on its face and if, under the circumstances, there is no apparent reason to doubt the veracity of the representation.

*Crown Property Dev., Inc.* at 657.

{¶ 26} After a review of the record, we find the trial court's finding of fraud is supported by the manifest weight of the evidence. Nguyen testified that in June 2008, appellants offered to sell United Nails to him and Luong for $65,000. The parties ultimately agreed to an arrangement in which appellees would provide a $15,000 cash down payment and repay the remaining balance of $50,000 on or before April 16, 2009. Based on this agreement, the parties executed the June 16, 2008 note. On appeal, appellants claim it was unreasonable for appellees to rely on the representations that a legitimate sale was being offered in light of the lack of formalities surrounding the transaction. Specifically, appellants argue that the first note in no way mentions the sale of the business and that the June 24, 2008 sale agreement stated the business was sold for $15,000 rather than the agreed $65,000. Accordingly, appellants assert there was no justifiable reliance in this case. However, as noted by the trial court, appellants should not benefit from their deliberate lack of formalities.

{¶ 27} Rather, we find the totality of the circumstances in this case demonstrates that Nguyen and Luong had no apparent reason to doubt the veracity of the appellants' representations regarding the sale of United Nails. The record indicates that the relationship between the parties was such that they "trusted" one another and were not overly concerned with formalizing their agreement. Moreover, although the record indicates Chen has previously operated several nail salons, the record does not demonstrate that either of the parties were familiar with the requirements necessary to effectuate a legal sale of a business. In addition, appellees took substantial steps in order to establish their own business. For instance, Nguyen provided testimony that he opened a business checking account, set up a new credit card machine and account, filed incorporation documents with the Ohio Secretary of State for Phuong Nguyen, LLC, applied for and received an Employer Identification Number from the IRS, hired employees and issued W-2s, and paid the rent and utilities for

the salon. As of August 2008, Chen at the very least was aware that the credit card machine and the utilities for the salon had been changed into Nguyen's name. At no time prior to January 2009 did Chen ever object to any of the actions taken by Nguyen and Luong in operating United Nails as the new owners. Accordingly, we find it was not unreasonable for appellees to believe appellants' representation that they were selling them the business. Although Chen and Dinh provided conflicting testimony, asserting that they never offered to sell the business to Nguyen and Luong, the trial court, as the trier of fact, was in the best position to weight the credibility of the witnesses. In light of the facts and circumstances of this case, we find the trial court clearly did not lose its way and create such a manifest miscarriage of justice such that its judgment finding appellants liable for fraud must be reversed.

{¶ 28} As the issue of fraud in the sale of the business was tried by the consent of the parties and the finding of fraud is supported by the weight of the evidence, we overrule appellants' first assignment of error.

## B. Appellees' Wrongful Eviction Claim

{¶ 29} Assignment of Error No. 2:

{¶ 30} THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANTS IN RENDERING A VERDICT FINDING APPELLANTS LIABLE FOR COUNT THREE-WRONGFUL EVICTION, AND FOR AWARDING DAMAGES THEREON.

{¶ 31} In their second assignment of error, appellants assert the trial court erred in granting judgment on appellee's wrongful eviction claim. Appellants take issue with the trial court's award of damages for the wrongful eviction of appellees from the premises.[4]

---

4. In their issue presented for review, appellants state that "the evidence failed to demonstrate a sublease between the parties." Beyond this statement, appellants fail to provide any argument, citation to authority, or references to the record to support this claim. Accordingly, we decline to address this argument. *See* App.R. 16(A); App.R. 12(A); *Kitchen v. Teeters*, 12th Dist. Clermont No. CA2011-06-048, 2012-Ohio-4343, ¶ 15.

- 14 -

Appellants assert that the trial court's judgment on the wrongful eviction claim and subsequent award of damages was inconsistent with its decision to deny appellees' conversion claim. Appellants contend that in denying appellees' conversion claim the trial court concluded that appellants did not exercise wrongful control over property belonging to appellees. Yet, in awarding damages on the wrongful eviction claim, the trial court necessarily concluded that certain property did in fact belong to appellees and appellees suffered a loss of such property in the amount of $6,129.73. Appellants argue that even if appellees owned the property subject to this damages award, appellees were not entitled to recover any damages because appellees abandoned such property.

{¶ 32} The determination of damages is within the discretion of the trial court and will be sustained by a reviewing court unless the award is against the manifest weight of the evidence. *City of Hamilton v. Abcon Const.*, 12th Dist. Warren No. CA97-03-027, 1997 WL 727641, *2 (Nov. 24, 1997).

{¶ 33} In instant case, the trial court found appellees were damaged as a result of appellants wrongfully evicting them from the premises and thereafter awarded appellees damages in the amount of $6,129.73. The trial court indicated this damage award was based on figures listed in Exhibit 17 and 18. At trial, Nguyen testified that Exhibit 17 was a list of all the equipment in the nail salon when he purchased the business. According to Nguyen, the items listed in Exhibit 17 were all initially purchased by appellants but ownership transferred to him when he and Luong purchased the business. As to Exhibit 18, Nguyen testified it was a list of items, including materials and supplies, which were left in the shop on January 10, 2009, and never returned. Exhibit 18 contained corresponding receipts and invoices for the items listed. The total for the items contained in Exhibit 18 is $6,129.73.

{¶ 34} From this record, it is clear that although the trial court referenced Exhibit 17 in its award for damages on the wrongful eviction count, the trial court only relied upon Exhibit

18 to determine the value of the loss appellees suffered as a result of the wrongful eviction. We find no inconsistencies in this result. As indicated previously, the trial court found appellees to be more credible than appellants. At trial, Nguyen conceded that the items listed in Exhibit 17 were originally purchased by Chen. In denying, the conversion claim, the trial court found that given the lack of formalities in the parties' business arrangement, it was unable to determine whether parties converted each other's property. It is apparent that the property the trial court was referring to in denying the conversion claim is the property listed in Exhibit 17. Exhibit 18, however, contains personal property that appellees testified that they purchased and stored at the nail salon premises. Such property was never returned and therefore was withheld as a result of the wrongful eviction. Accordingly, we find the trial court's judgment is not inconsistent and the weight of the evidence supports the trial court's conclusion that the precipitous actions of appellants in locking appellees out of the premises and the refusal to return the items listed in Exhibit 18 caused damages in the amount of $6,129.73.

{¶ 35} Moreover, we find that the record does not support appellants' assertion that appellees abandoned the property. "In order for an abandonment to exist, affirmative proof of the intent to abandon coupled with acts or omissions implementing the intent must be shown." *Hamilton v. Harville*, 63 Ohio App. 3d 27, 30 (12th Dist.1989). The record indicates that appellees, after being locked out of the business, contacted appellants and requested that their personal belongings be returned. Nguyen testified that the police were present at the time and they were told it was a civil matter and advised to obtain an attorney. Thereafter, Nguyen stated that he did not contact appellants regarding the return of the property and left it up to the lawyers. Based on this record, we do not find that appellees intended to abandon their property, but rather chose to pursue legal remedies for its return.

{¶ 36} In the present case, we find no abuse of discretion and the trial court's

damages award for wrongful eviction is supported by the weight of the evidence. Consequently, appellants' second assignment of error is overruled.

## C. Appellants' Counterclaim for Breach of Contract

{¶ 37} Assignment of Error No. 3:

{¶ 38} THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANTS IN RENDERNIG A VERDICT DENYING APPELLANTS' CLAIM FOR BREACH OF CONTRACT.

{¶ 39} In their third assignment of error, appellants assert the trial court erred in denying their claim that appellees breached the parties' June 16, 2008 contract. Appellants first contend that because appellees failed to answer the counterclaim, the allegations contained in the counterclaim should have been deemed admitted and the trial court was required to grant judgment in their favor. Appellants also assert the trial court violated the parol evidence rule by admitting evidence outside the written terms of the June 16, 2008 note. Finally, appellants assert the trial court's decision was against the manifest weight of the evidence. Appellants contend they presented sufficient evidence to support their breach of contract claim as they demonstrated the existence of a "duly executed agreement stating that [appellees] had borrowed $50,000.00 from [a]ppellants to be paid back" by April 16, 2009. We find no merit to appellants' arguments.

{¶ 40} As an initial matter, we note that appellants waived any arguments regarding appellees' failure to answer the counterclaim. The failure to pursue a default judgment motion in the trial court when an answer is not filed or is untimely filed constitutes a waiver. *Aey Elec. v. Battaglini*, 7th Dist. Mahoning No. 03 MA 64, 2004-Ohio-6501, ¶ 27-31 (finding appellant was not entitled to a directed verdict on his counterclaim based on Civ.R. 8(D) where appellant failed to request a default judgment in advance of trial); *Maier v. Shields*, 10th Dist. Franklin No. 07-CA-21, 2008-Ohio-3874, ¶ 59. The record reflects that appellants never made a motion under Civ.R. 55(A) for a default judgment based on appellees' failure to

"plead or otherwise defend" against the counterclaim for breach of contract. There is also no indication in the record that appellants ever filed a motion for summary judgment based on appellees' failure to file an answer to the counterclaim. Thus, the trial court never considered finding the allegations in the counterclaim admitted or entering a default judgment on appellants' breach of contract counterclaim. Accordingly, such claims are waived on appeal.

{¶ 41} Moreover, we find no error in the trial court's decision to admit evidence of the alleged oral agreement of the parties which varied the terms of the June 16, 2008 note. The decision whether to admit or exclude evidence is left to the sound discretion of the trial court and will not be reversed absent an abuse of discretion. *Roberts*, 2014-Ohio-1893 at ¶ 12. The parol evidence rule only bars the admission of evidence of an oral agreement when there is a final written integration of the parties' agreement. *Galmish v. Cicchini*, 90 Ohio St. 3d 22, 28 (2000) ("[t]he parol evidence rule applies * * * only to integrated writings"). Integration is the act of embodying the complete terms of an agreement in a writing. *Id.* at 27. In the present case, both Nguyen and Chen testified that the June 16, 2008 note did not include all the terms agreed upon by the parties. Consequently, on this record, we find no violation of the parol evidence rule.

{¶ 42} Finally, we find the trial court's decision finding no contract between the parties is supported by the weight of the evidence. As stated above, in conducting a manifest weight analysis, we weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. *Eastley*, 2012-Ohio-2179 at ¶ 20.

{¶ 43} To set forth a claim for breach of contract, a plaintiff must prove: (1) the existence of a contract, (2) plaintiff fulfilled its contractual obligations, (3) defendant failed to fulfill its contractual obligations, and (4) plaintiff incurred damages as a result. *Valley Paint &*

*Body v. Natl. Union Fire Ins. Co. of Pittsburgh*, 12th Dist. Clermont No. CA2010-08-060, 2011-Ohio-1308, ¶ 19. Essential elements of a contract include an offer, acceptance, contractual capacity, consideration, a manifestation of mutual assent, and legality of object and consideration. *Artisan Mechanical Inc. v. Beiser*, 12th Dist. Butler No. CA2010-02-039, 2010-Ohio-5427, ¶ 26. Mutual assent or "a meeting of the minds" means that both parties have reached an agreement on the contract's essential terms. *Beiser* at ¶ 27.

**{¶ 44}** At trial, appellants claimed the parties reached a loan agreement as evidenced by the June 16, 2008 note. Chen testified that although some payments on the loan had been made, appellees still owed appellants $18,000. After hearing all the evidence, the trial court found appellants' contention that they loaned appellees $50,000 was not credible and denied their claim for breach of contract. In denying this claim, the trial court also found that there was no meeting of the minds. After a review of the record, we find no error in the trial court's decision. At trial, both Nguyen and Luong testified they never actually received $50,000 from Chen and Dinh. Rather, according to appellees, the June 16, 2008 note represented the remaining balance they owed on the purchase of United Nails. Moreover, although appellants testified they gave $50,000 to appellees as a loan, they were unable to corroborate this testimony with any documentary evidence such as receipts or checks. Finally, as the parties provided diametrically opposed versions of the terms of the agreement, the trial court justifiably determined there was no meeting of the minds on the contract's essential terms. Based on the foregoing, we find the trial court clearly did not lose its way and create such a manifest miscarriage of justice such that its judgment denying appellants' breach of contract claim must be reversed.

**{¶ 45}** Appellants' third assignment of error is overruled.

### D. Appellants' Counterclaim for Conversion

**{¶ 46}** Assignment of Error No. 4:

{¶ 47} THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANTS IN RENDERING A VERDICT CONTRARY TO APPELLANTS' CLAIM FOR CONVERSION.

{¶ 48} In appellants' fourth assignment of error, they assert the trial court's decision denying their claim for conversion was against the manifest weight of the evidence. As in their third assignment of error, appellants also contend the allegations in their counterclaim should have been deemed admitted based on appellees failure to file an answer, and as a result, the trial court should have granted judgment in their favor on the conversion claim.

{¶ 49} As noted above, appellants waived any argument based on appellees' failure to file an answer to their counterclaim. Appellants never sought judgment on their counterclaim for conversion due to this failure to plead or otherwise defend. *See* Civ.R. 55(A). Rather, appellants proceeded with a trial on the merits where the parties presented their respective versions of the dealings of the parties. Consequently, as appellants failed to raise this issue to the trial court, we find it has been waived on appeal. *See Battaglini*, 2004-Ohio-6501 at ¶ 30; *Maier*, 2008-Ohio-3874 at ¶ 59.

{¶ 50} Appellants also argue within their fourth assignment of error that they presented sufficient evidence which established appellees took wrongful control of the business's monthly revenue of approximately $10,000 for seven months. Appellants assert they established appellees "took wrongful control and possession of money belonging to appellants by changing appellant Chen's credit account and diverting funds to their own account." Consequently, appellants argue the trial court's finding that appellees were not liable for conversion was against the manifest weight of the evidence.

{¶ 51} In the present case, both parties brought conversion claims. The trial court determined that based on the lack of formalities regarding the parties business arrangement, it was unable to determine which party actually had the ownership interest in the claimed property. Accordingly, the trial court found "[t]here was no evidence presented by either party

- 20 -

that the parties exercised wrongful control over each other's property," and thereafter denied the conversion claims.

{¶ 52} Conversion is the "wrongful exercise of dominion over property to the exclusion of the rights of the owner, or withholding it from his possession under a claim inconsistent with his rights." *DLK Co. of Ohio v. Meece*, 12th Dist. Warren No. CA2012-07-060, 2013-Ohio-860, ¶ 27. The essential elements of conversion are: (1) plaintiff's ownership or interest in the property; (2) plaintiff's actual or constructive possession or immediate right to possession of the property; (3) defendant's wrongful interference with plaintiff's property rights; and (4) damages. *Id.*

{¶ 53} Based on our review of the record, we find there is competent, credible evidence to support the trial court's factual findings and its decision was not against the manifest weight of the evidence. At trial, Nguyen testified that as the new owners of United Nails he and Luong were entitled to the revenue generated by the business from July 2008 through January 2009. However, both Chen and Dinh testified that they only agreed to permit appellants to manage the business. Chen further stated that he and Luong had only agreed to allow appellants to keep a portion of the revenue, but the rest of the money had to be forwarded to Chen. The trial court did not find appellants' version of the events credible. The trial court, as the trier of fact, was in the best position to weigh the credibility of the witnesses and resolve conflicts in the evidence. Accordingly, the trial court's conclusion that appellants failed to demonstrate their ownership interest in the revenue and whether appellees exercised "wrongful control over" this property was supported by the weight of the evidence. On this record, the trial court clearly did not lose its way and create such a manifest miscarriage of justice such that its judgment denying appellants' conversion claim must be reversed

{¶ 54} Appellants' fourth assignment of error is overruled.

### E. Prejudgment Interest Award

{¶ 55} Assignment of Error No. 5:

{¶ 56} THE TRIAL COURT ERRED IN ORDERING APPELLANTS TO PAY PREJUDGMENT INTEREST ON THE AWARD OF MONETARY DAMAGES.

{¶ 57} In their fifth and final assignment of error, appellants assert the trial court erred in ordering prejudgment interest on the monetary damages awarded to appellees. Appellants contend that the prejudgment interest was improper and failed to meet the requirements of R.C. 1343.03(C). Specifically, appellants assert appellees did not request prejudgment interest in their complaint or in a motion and there was no hearing on the issue. Appellees concede that the trial court erred in awarding prejudgment interest. However, appellees request the court reverse and remand for further proceedings so that they may file a motion requesting prejudgment interest pursuant to R.C. 1343.03(C).

{¶ 58} Upon a review of the record, we agree with the parties that the trial court erred in awarding prejudgment interest in this case. Pursuant to R.C. 1343.03(C), a trial court may award prejudgment interest, "upon motion of any party to a civil action that is based on tortious conduct," if the court "determines at a hearing held subsequent to the verdict or decision in the action that the party required to pay the money failed to make a good faith effort to settle the case and that the party to whom the money is to be paid did not fail to make a good faith effort to settle the case." R.C. 1343.03(C). "[T]he plain terms of the statute require that a hearing be held." *Pruszynski v. Reeves*, 117 Ohio St.3d 92, 2008-Ohio-510, ¶ 14. Subsection (C) of the statute is equally clear that an award of prejudgment interest must be made upon a motion of one of the parties, and only after the trial court has determined that such an award is proper based on the good faith efforts of the parties to settle the case. R.C. 1343.03(C).

{¶ 59} In the present case, the trial court awarded prejudgment interest sua sponte.

There was no motion filed by appellees after the decision in their favor which requested an award of prejudgment interest.[5] Moreover, the trial court failed to hold a hearing. "By the explicit terms of R.C. 1343.03(C)(1), trial courts do not have discretion to decide whether a hearing must be held. The language is quite clear that trial courts must conduct a hearing, and, * * * the hearing must be an evidentiary hearing." *Prusznski* at ¶ 19. Based on the foregoing, we find the trial court erred when it circumvented the requirements of R.C. 1343.03(C) and awarded appellees prejudgment interest. Therefore, appellants' fifth assignment of error is sustained. The prejudgment interest award is reversed and vacated. The matter is remanded for further proceedings consistent with the requirements set forth in R.C. 1343.03(C).

## III. Conclusion

{¶ 60} In light of the foregoing, to the extent the trial court's decision awarded prejudgment interest, the judgment is reversed and the matter remanded for further proceedings consistent with this opinion. In all other respects, the judgment of the trial court is affirmed.

{¶ 61} Judgment affirmed in part, reversed in part, and remanded for further proceedings.

RINGLAND, P.J., and S. POWELL, J., concur.

---

5. The trial court's sua sponte grant of prejudgment interest rendered the filing of such a motion futile. Therefore, we find that the failure to file such a motion does not constitute a waiver of prejudgment interest under the circumstances of this case.